Matthew G. Summers (admitted *pro hac vice*)
Laurel D. Roglen
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4428
E-mail: summersm@ballardspahr.com
      roglenl@ballardspahr.com

*Attorneys for Wells Fargo Bank, National Association, as Trustee*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
In re                                                    : Chapter 11

25 JAY STREET, LLC,                    : Case No. 23-44083 (ESS)

                                 Debtor.
---------------------------------------------------------x

**MOTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION,**
**AS TRUSTEE, FOR THE APPOINTMENT OF A**
**CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. § 1104(a)**

Wells Fargo Bank, National Association as Trustee for the benefit of the registered holders of Benchmark 2020-B17 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B17 (the "Lender"), through undersigned counsel, respectfully submits this *Motion of Wells Fargo Bank, National Association, as Trustee, for the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)* (this "Motion") pursuant to section 1104(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2007.1 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the Lender respectfully states as follows:

## PRELIMINARY STATEMENT

1.  The Lender seeks the appointment of a chapter 11 trustee because financial records provided to it by 25 Jay Street, LLC (the "Debtor"), show that the Debtor transferred the aggregate amount of approximately $1.4 million to JT Capital Investors LLC ("JT Capital"), JES Management, and Alfie Hospitality during the period from February 1, 2022 through November 7, 2023 (the "Petition Date").  Upon information and belief, JT Capital, JES Management, and Alfie Hospitality are insiders or affiliates of the Debtor through common ownership by the Debtor's members, Joseph Torres, Sr. and Joseph Torres, Jr.  Further, upon information and belief the "JT" in JT Capital stands for Joseph Torres.  The Debtor's last transfer to JT Capital, in the amount of $90,000.00, was made on the Petition Date.

2.  In October 2023, the Debtor also transferred in excess of $100,000.00 to Kip Jacobs who is, upon information and belief, an artist by trade and friend of Joseph Torres, Jr.  This transfer was in addition to multiple transfers made to Mr. Jacobs at the rate of approximately $800.00 per month for his alleged role as supervisor at the Property (as defined below) and the rent-free loft apartment the Debtor continues to provide to Mr. Jacobs.  The relevant bank account statements and prepetition operating reports with the relevant transfers highlighted are attached as **Exhibit A**.

3.  The funds transferred by the Debtor were largely the proceeds of a loan in the original principal amount of approximately $1.6 million (the "SBA Loan") that the Debtor obtained from the United States Small Business Administration ("SBA") under a COVID relief related program.  The Debtor received proceeds in the amount of $1,487,013.00 on February 9, 2022, from the SBA Loan and deposited the proceeds in its operating account, which was then held at Signature Bank.  The Debtor made the transfers while failing to make the monthly debt service payments to the Lender.

4.  Moreover, after failing to provide the Lender with 2022 and 2023 financial information prepetition, the Debtor did not immediately disclose the transfers upon filing the bankruptcy case. Instead, the Debtor continued to obfuscate about what had happened to the proceeds from the SBA Loan by failing to disclose the transfers described in paragraphs 1-3 of this Motion in its Statement of Financial Affairs.

5.  Since the Petition Date, the Debtor has also failed repeatedly to provide the Lender with a rent roll showing the start and end date of each lease, the square footage of each unit, and whether rent is controlled or market for each residential unit (which is essential to the Lender's efforts to determine the value of the Property), was late making the $250,000.00 tax payment in February 2023 required under the cash collateral orders entered in this case, and has still not provided the Lender with financial statements for 2022 as required by the cash collateral orders. The Debtor finally provided a rent roll with all of the information requested by Lender on February 27, 2024.

6.  As a result of these transfers made by the Debtor, the Debtor's initial failure to honestly disclose these transfers, the Debtor's failure to take any action to avoid and recover these transfers during the more than five months this case has been pending, and the Debtor's postpetition delays in providing basic financial information to the Lender, the Debtor should not continue to operate as a debtor in possession. Instead, a chapter 11 trustee should be appointed to manage and operate the Debtor's business.

## JURISDICTION

7.  The United States Bankruptcy Court for the Eastern District of New York (this "Court") has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (O), and the Court may enter a final order consistent with Article III of the United States Constitution.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicates for the relief requested herein are sections 1104(a) of the Bankruptcy Code and Bankruptcy Rules 2007.1 & 9014.

## BACKGROUND

10. On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is authorized to operate its business as a debtor in possession. To date, no official committee of unsecured creditors has been appointed in the Debtor's case.

11. The Debtor's sole business is to own and operate the real property known as 25 Jay Street, Brooklyn, New York (the "Property"). The improvements on the Property consist of a loft apartment building with several commercial tenants on the ground floor. The Debtor's case is a single asset real estate case within the meaning of section 101(51B) of the Bankruptcy Code.

12. On or about January 29, 2020, Citi Real Estate Funding Inc. (the "Original Lender") made a commercial mortgage loan in the original principal amount of $18,500,000.00 (the "Loan") to the Debtor. The Loan is evidenced by:

    a. a Loan Agreement dated January 29, 2020, by and between the Original Lender and the Debtor;

    b. a Consolidated, Amended, Restated, and Consolidated Promissory Note dated January 29, 2020, in the principal amount of $18,500,000.00 and payable to Original Lender and its successors and assigns (the "Note"), which was subsequently assigned by Original Lender to Lender pursuant to an Allonge effective March 24, 2020 by Original Lender to Lender (the "Allonge");

    c. a Consolidated, Amended and Restated Mortgage and Security Agreement dated as of January 29, 2020 (the "Mortgage"), which was recorded with the Office of the City

Register of the City of New York (the "Recorder") on February 7, 2020, as Instrument No. CRFN 2020000051005;

    d.  an Assignment of Leases and Rents dated January 29, 2020, which was recorded with the Recorder on February 7, 2020, as Instrument No. CRFN 2020000051006 (the "ALR");

    e.  a UCC-1 Financing Statement with Debtor as debtor and Original Lender as secured party, recorded with the Recorder on February 14, 2020, as Instrument No. CRFN 2020000060290 (the "Original City Financing Statement", and together with a UCC-3 Financing Statement assigning the Original City Financing Statement to Lender recorded with the Recorder on February 27, 2020, as Instrument No. CRFN 2020000179895, the "City Financing Statement"); and

    f.  a UCC-1 Financing Statement filed with the New York Secretary of State on February 12, 2020, as financing statement number 202002120097551 (the "Original State Financing Statement", and together with a UCC-3 Financing Statement assigning the Original State Financing Statement to Lender filed with the New York Secretary of State as financing statement number 202006238266218, the "State Financing Statement").

  13.  The Loan was securitized and validly assigned by Original Lender to Lender pursuant to the Allonge, a General Assignment effective March 24, 2020 by Original Lender to Lender (the "General Assignment"), an Assignment of Mortgage by Original Lender to Lender dated March 29, 2020 but effective as of March 24, 2020, which was recorded with the Recorder on June 23, 2020, as Instrument No. CRFN 2020000179893 (the "Assignment of Mortgage"), and an Assignment of Assignment of Leases and Rents by Original Lender to Lender dated March 29, 2020 but effective as of March 24, 2020, which was recorded with the Recorder on June 23, 2020,

as Instrument No. CRFN 2020000179894 (the "Assignment of ALR").  The Loan Agreement, Note, Allonge, Mortgage, ALR, General Assignment, Assignment of Mortgage, Assignment of ALR, City Financing Statement and State Financing Statement together with all other documents evidencing the indebtedness of the Debtor to Lender are collectively referred to as the "Loan Documents."

14.    The Debtor's indebtedness to the Lender is secured by properly perfected and unavoidable first priority liens and security interests in *inter alia*, the Property, the rent paid by tenants at the Property and the proceeds thereof, all of the Debtor's personal property and the proceeds thereof, and all right, title, and interest in all leases related to the Property and all rent due and payable under such leases and the proceeds thereof.

15.    As of the Petition Date, the amount due and owing to the Lender under the Loan Documents was the amount of at least $26,451,886.44.

## ARGUMENT

16.    Section 1104 of the Bankruptcy Code provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, **either before or after the commencement** of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor

11 U.S.C. § 1104(a) (emphasis added).

17. The Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations. *See* 11 U.S.C. §§ 1007, 1008; *see also, In re Eurospark Indus.*, 424 B.R. 621, 627 (Bankr. E.D. N.Y. 2010). However, a debtor-in-possession also has well recognized fiduciary duties to the bankruptcy estate, which include "a duty of care to protect the assets, a duty of loyalty and a duty of impartiality." *Eurospark Indus.*, 424 B.R at 627 (internal citations and quotations omitted). To fulfill these duties, a "debtor-in-possession must 'avoid self-dealing, conflicts of interest and the appearance of impropriety.'" *Id; see also, In re Ionosphere Clubs, Inc*., 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (quoting *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217 (3d Cir. 1989)) ("A debtor-in-possession must act as a 'fiduciary of his creditors' to 'protect and to conserve property in his possession for the benefit of creditors', and to 'refrain [ ] from acting in a manner which could damage the estate, or hinder a successful reorganization of the business.'").

18. As this Court has previously explained, "[t]he willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee" and if the debtor-in-possession does not carry out these responsibilities "[s]ection 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D. N.Y. 1989).

A. **Cause Exists for the Appointment of a Chapter 11 Trustee Under Section 1104(a)(1)**

19. Where cause "cause" exists under section 1104(a)(1) of the Bankruptcy Code, it triggers the mandatory appointment of a trustee. *In re Sillerman*, 605 B.R. 631, 642 (Bankr. S.D.N.Y. 2019); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. at 525.

20.     Although section 1104(a)(1) of the Bankruptcy Code lists certain wrongs constituting "cause" warranting the appointment of a trustee, that list is not exhaustive. *In re Klaynberg*, 643 B.R. 309, 318 (Bankr. S.D.N.Y. 2022); *In re Ashley River Consulting, LLC,* No. 14-13406 (MG), 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015). Courts have also considered the following factors when examining whether "cause" exists under section 1104(a)(1) of the Bankruptcy Code: "conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence." *In re Ashley River Consulting, LLC*, 2015 WL 1540941, at *9 (quoting *In re Altman*, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), *aff'd in part, vacated in part*, 254 B.R. 509 (D. Conn. 2000)).

21.     Although a court's focus when making a determination for cause is on the debtor's current management, a court "may consider both the pre-and postpetition misconduct of the current management when making the determination that 'cause' exists for the appointment of a trustee." *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007) (citing *Midatlantic Nat'l Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.),* 4 B.R. 635, 644–45 (Bankr.E.D.N.Y.1980)); *see also, Schuster v. Dragone*, 266 B.R. 268, 271 (D. Conn. 2001).

22.     In this case, the Debtor's prepetition transfers to insiders or affiliates, including the approximately $1.4 million transferred to JT Capital, JES Management, and Alfie Hospitality (including $90,000.00 transferred to JT Capital on the Petition Date), the more than $100,000.00 transferred to Mr. Jacobs in October 2023, the Debtor's failure to disclose these transfers in its Statement of Financial Affairs, the Debtor's failure to take any action to avoid and recover these transfers during the more than five months that the Debtor's case has been pending, and the

Debtor's inability or refusal to provide basic financial information and, until February 27, 2024, a complete rent roll detailing the information repeatedly requested by the Lender from the outset of the case (and before) constitute clear cause to appoint a chapter 11 trustee.

23. The Debtor's prepetition conduct by burdening the Debtor with the SBA Loan and then diverting the proceeds to affiliates, insiders, and friends, completely breached the Debtor's obligations to the Lender and the Debtor's other creditors, and rises to the level of fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the Debtor required to appoint a chapter 11 trustee. Indeed, this conduct of raiding the Debtor continued until the Petition Date, on which the Debtor transferred $90,000.00 to JT Capital.

24. Moreover, the Debtor's dishonesty continued postpetition because the Debtor failed to disclose the approximately $1.4 million in prepetition transfers in its Statement of Financial Affairs. The Debtor's incompetence and gross mismanagement has continued postpetition with the Debtor being unable or unwilling to provide a rent roll to the Lender in the form required to be able to value the Property until February 27, 2024, and the Debtor's failure to provide 2022 or 2023 financial statements. Further, the Debtor continues to allow Mr. Jacobs to live in a unit at the Property rent free and continues to pay Mr. Jacobs for his role as supervisor of the Property, although it is entirely unclear what Mr. Jacobs (an artist by trade) does at the Property beyond being a friend of Joseph Torres, Jr.

25. The Debtor also has failed to take any action to avoid and recover the approximately $1.4 million transferred prepetition.

26. These circumstances constitute cause under section 1104(a)(1) of the Bankruptcy Code to appoint a chapter 11 trustee.

B.      **Cause Exists for the Appointment of a Chapter 11 Trustee Under Section 1104(a)(2)**

27.     Alternatively, section 1104(a)(2) of the Bankruptcy Code allows appointment of a trustee if it is in the interest of creditors, even if the court does not find that cause exists. *In re The 1031 Tax Grp., LLC*, 374 B.R. 78 at 90; *Klaynberg*, 643 B.R. 309 at 318; *In re Sharon Steel Corp.*, 871 F.2d 1217 at 1226.

28.     As the Court explained in *In re The 1031 Tax Grp., LLC*, "[s]ection § 1104(a)(2) 'envisions a flexible standard' and 'gives the district court discretion to appoint a trustee when doing so would serve the parties' and estate's interests.'" 374 B.R. 78 at 90 (citations omitted).

29.     Further, under section 1104(a)(2), courts "'eschew rigid absolutes and look to the practical realities and necessities' of the record to determine whether the appointment of a trustee is in the best interests of the estate." *In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (quoting *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006)).

30.     This standard "is a flexible one that suggests a balancing of costs and benefits in determining whether the appointment of a trustee is appropriate." *Id.* (citing *In re Ionosphere Clubs, Inc.*, 113 B.R. at 168).

31.     While this standard is "amorphous" some of the following factors have been considered by courts when considering whether a trustee should be appointed under section 1104(a)(2) of the Bankruptcy Code: "(i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects of the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of the creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of appointment." *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 91 (Bankr. S.D.N.Y. 2007) (quoting *Euro–American Lodging Corp.* 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007) (quoting *In*

*re Ionosphere,* 113 B.R. at 168) (citations omitted)); *see also*, *In re V. Savino Oil & Heating Co.,* 99 B.R. at 527 n. 11 ("[T]he factors constituting a basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion").

32. A finding of fault on the part of the debtor-in-possession is not necessary before appointing a chapter 11 trustee under section 1104(a)(2) of the Bankruptcy Code. *Sharon Steel*, 871 F.2d at 1226; *Euro-Am. Lodging*, 365 B.R. at 428; *1031 Tax Group*, 374 B.R. at 90.

33. Even if the prepetition and Petition Date transfers and raiding of the Debtor somehow do not constitute sufficient cause to appoint a chapter 11 trustee for fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the Debtor, the Court still can appoint a chapter 11 trustee because doing so is in the best interests of creditors. In this case, given the prepetition and ongoing behavior of the Debtor, such an appointment clearly is in the best interests of creditors.

34. The Lender is the largest creditor in the case and it has lost confidence in the honesty and trustworthiness of Debtor's management. Appointment of a chapter 11 trustee will resolve this issue. Further, all creditors will benefit from a chapter 11 trustee pursuing the avoidance and recovery of the prepetition transfers, which the Debtor has not (and, presumably will not) pursue unless a chapter 11 trustee is appointed. Finally, the appointment of a chapter 11 trustee will result in the preparation and production of valid rent rolls and financial statements upon which the Lender can rely in attempting to value the property, which is a necessary step in moving this case toward a conclusion.

## NOTICE

35. Notice of this Motion has been provided to: (i) the Debtor; (ii) the Office of the United States Trustee for the Eastern District of New York; and (iii) any other party entitled to

notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d).  In light of the nature of the relief requested herein, the Lender submits that no other or further notice is necessary or required prior to entry of the proposed Order.

## NO PRIOR REQUEST

36.    No prior motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE,** the Lender respectfully requests that this Court grant the relief sought in the Motion, direct the immediate appointment of a chapter 11 trustee, and grant it such other and further relief as it deems just and proper.

Dated:  March 29, 2024

Respectfully submitted,

*/s/ Laurel D. Roglen*
Matthew G. Summers (admitted *pro hac vice*)
Laurel D. Roglen
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4428
Fax:  (302) 252-4466
E-mail: summersm@ballardspahr.com
                roglenl@ballardspahr.com

*Attorneys for Wells Fargo Bank, National Association, as Trustee*