Gary C. Fischoff, Esq.
Joan A. Keely, Esq.
BERGER, FISCHOFF, SHUMER,
WEXLER & GOODMAN, LLP
6901 Jericho Turnpike, Suite 230
Syosset, New York 11791
(516) 747-1136
Gfischoff@bfslawfirm.com
Jkeely@bfslawfirm.com

*Hearing Date: May 3, 2024*
*Time: 10:30 a.m.*

*Attorneys for the Debtor and Debtor-in-Possession*
*25 Jay Street, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

25 JAY STREET, LLC,

                       Debtor.
-------------------------------------------------------X

Chapter 11

Case No: 23-44083 (ESS)

## DEBTOR'S OBJECTION TO THE MOTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. § 1104(a)

TO:    HONORABLE ELIZABETH S. STONG
         UNITED STATES BANKRUPTCY JUDGE

25 JAY STREET, LLC, the Debtor and Debtor-in-Possession herein ("Debtor"), by its attorneys, Berger, Fischoff, Shumer, Wexler & Goodman, LLP, as and for its objection to Wells Fargo Bank, National Association, as Trustee (the "Trustee") Motion for the Appointment of a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(a) [Doc. No. 54] (the "Motion"), respectfully represents as follows:

### PRELIMINARY STATEMENT

1. In its Motion, the Trustee disingenuously claims that the Debtor's financial transactions and payments to an employee of the Debtor over one and one-half (1 ½) years prior to the

Petition Date somehow support the appointment of a trustee.

2. The Trustee would have this Court believe that because the "Lender[1]...has lost confidence in the honesty and trustworthiness of Debtor's management" (*See* MOT. ¶ 34) that the Debtor should no longer manage its single real estate asset, known as and located at 25 Jay Street, Brooklyn, NY (the "Property").

3. In fact, the Trustee was and is acting in bad faith in accelerating the Loan during COVID for a technical default out of the Debtor's control and imposing exorbitant improper fees on the Debtor.

4. The inherent weakness in the arguments advanced in the Motion is the Trustee's reliance on mostly prepetition financial transactions made in the ordinary course of business.

5. The Trustee attacks the Debtor's payment of the paltry sum of $800.00 per month to an employee (Mr. Jacobs) to operate a five-story mixed-use building consisting of thirty-five (35) residential units and five (5) retail/commercial units located in a heavily trafficked section of Brooklyn. I surmise that it would be nearly impossible for the Debtor to find anyone else in New York City to take on that employment.

6. The Trustee also attaches and highlights numerous check amounts paid to Mr. Jacobs, mostly in sums of approximately $99.15 and under. Clearly, this is to be expected in the care of forty (40) units and an entire building.

7. There are reasonable explanations to debunk the Trustee's accusations. The Trustee has not proffered any credible evidence to support the extraordinary relief it seeks.

---

[1] Capitalized terms not defined herein refer to defined terms in the Trustee's Motion [Doc. No. 54].

## FACTUAL AND PROCEDURAL BACKGROUND

8. On November 7, 2023, the Debtor filed a voluntary Petition seeking relief from its creditors pursuant to chapter 11 of the Bankruptcy Code, 11 U.S.C. et. seq.

9. The Debtor has continued to remain in possession, custody and control of its business and property pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10. An Official Committee of Unsecured Creditors has not been appointed herein.

## ARGUMENT

### I. The Trustee Has Failed to Satisfy Its Burden Sufficient to Warrant the Appointment of a Trustee

11. The appointment of a trustee is an extraordinary and disfavored remedy to be exercised only in the most dire of circumstances. *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006); *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998); *see also, In re W.R. Grace & Co.*, 285 B.R. 148, 158 (Bankr. D. Del. 2002) (appointment of a trustee is warranted only as "a last resort").

12. Generally, there is a strong presumption under the Bankruptcy Code that a debtor be permitted to remain in possession, which "arises from a belief that the debtor and current management are generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989); *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003) (noting that there is a "strong presumption that the debtor should be permitted to remain in possession," because "appointing a trustee amounts to replacing much of a debtor's high-level management" (internal quotation marks omitted)).

13. Accordingly, courts have held that the party seeking the appointment of a trustee carries the substantial burden of demonstrating clear and convincing evidence that one or more of the requirements under Section 1104(a) have been satisfied. *See Adelphia*, 336 B.R. at 655.

A. **There is No "Cause" Sufficient to Warrant Appointment of a Trustee under Section 1104(a)(1)**

14. The Trustee brought the instant motion for an Order pursuant to Section 1104(a) of the Bankruptcy Code.

15. "Cause" under 1104(a)(1) is reserved for cases where clear and convincing evidence has been adduced establishing that management, now under the supervision and control of the Bankruptcy Court and the Office of the United States Trustee, will dissipate the assets of the estate by fraud, gross mismanagement and/or incompetence, leaving little or no hope for reorganization. *See In re North Star Contracting Corp.*, 128 B.R. 66, 68 (Bankr. S.D.N.Y. 1991); *see also Schuster v. Dragone*, 266 B.R. 268, 271 (Bankr. D. Conn. 2001) ("the Court must find something more aggravated than simple mismanagement in order to appoint a trustee").

16. Courts have consistently refused to appoint a trustee simply because the debtor has experienced financial problems, is insolvent, or has even made imprudent business decisions, reasoning that such factors are not "conclusive of the debtor's lack of integrity or his inability to superintend the reorganization." *See In re Eichorn*, 5 B.R. 755, 757 (Bankr. D. Mass. 1980).

17. Here, the Trustee is not even presenting proof of current imprudent business decisions. While it makes repeated mention of the fact that the rent roll for the forty (40) tenants was not submitted promptly, the fact is that it was provided, making that argument moot. It

seems the Trustee will not be satisfied until the business fires its only superintendent for the five-story building, just to save $800.00 **per month**.

18. The numerous bank statements offered by the Trustee are all (except for one) prepetition statements that represent the everyday costs associated with doing business. The fact is that the borrower continued to pay its monthly payments during the COVID pandemic, despite the fact that its commercial tenants might not have paid rent to the Debtor. Post-Petition Date, the Debtor has filed business operating reports and has been making payments of $60,000.00 per month and in excess of $380,000.00 for real estate taxes under the cash collateral orders. All tenant rental payments are going into the DIP account. The Trustee falls short of presenting clear and convincing evidence sufficient for the appointment of a trustee by this Honorable Court.

19. Moreover, bankruptcy courts have long recognized the need to employ less draconian and disruptive means than appointing a trustee to preserve avoidance claims, and routinely authorize creditors' committees to investigate and prosecute causes of action against insiders. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 576-77, 580 (3d Cir. 2003) (bankruptcy courts can authorize creditors' committees to avoid fraudulent transfers for the benefit of the estate to solve "the proverbial problem of the fox guarding the henhouse" and that this result is preferable to the appointment of a chapter 11 trustee).

20. With respect to post-petition expenses, the Trustee provides no support for its claims that the Debtor's post-petition expenditures were improper as a matter of law. Indeed, the Trustee places the majority of emphasis on pre-petition expenditures and not the current status of the debtor in possession. The Trustee's mere concerns with the propriety of pre-

and post- petition expenses, which have been fully disclosed, do not rise to the level of proof required for the appointment of a trustee.

**B. The Appointment of a Trustee is Not in the Best Interests of Creditors as Required by Section 1104(a)(2)**

21. Although, as the Trustee argues, subsection (a)(2) seemingly provides a more flexible standard for the appointment of a trustee than that provided under subsection (a)(1), the "best interests" test of subsection (a)(2) is not a "catch-all" provision for the appointment of a trustee when "cause" cannot be established under subsection (a)(1). As articulated by the leading treatise: "Few situations come to mind in which grounds will exist for the appointment of a trustee under subsection (a)(2) although "cause" for such appointment does not exist under subsection (a)(1)." 7 Collier on Bankruptcy § 1104.02[3][d][iii], at 1104-17 (L. King 15th ed. 2002).

22. The presumption in favor of the continuation of current management, places a "substantial burden" on the party seeking the appointment of a trustee. To prevail under subsection(a)(2), there must be a showing of clear and convincing evidence of egregious conduct, such as to warrant the grant of extraordinary relief. *See, e.g., In re W.R. Grace & Co.*, 285 B.R. 148, 157 (Bankr. D. Del. 2002) (movant must prove facts under section 1104(a) by "clear and convincing evidence").

23. Here, the attendant costs of appointing a trustee—including the trustee's fees and expenses, the fees and expenses of its counsel, and the delay associated with the need to familiarize any trustee with the Debtor's assets and liabilities as well as the outstanding issues in this case—greatly outweigh any potential benefit to the estate. *See In re General Oil Distribs., Inc.*, 42 B.R. 402, 410 (Bankr. E.D.N.Y. 1984) (despite finding

6

mismanagement, appointment of trustee was denied to avoid "saddling the estate with the expense of a trustee and additional counsel").

## CONCLUSION

24. For the reasons set forth above, the Debtor requests the Trustee's Motion be denied in its entirety.

Dated: Syosset, New York
April 26, 2024

BERGER, FISCHOFF, SHUMER,
WEXLER & GOODMAN, LLP

*Attorneys for the Debtor and Debtor-in-Possession 25 Jay Street, LLC*

By: _____
Gary C. Fischoff, Esq.
Joan A. Keely, Esq.
6901 Jericho Turnpike, Suite 230
Syosset, New York 11791
(516) 747-1136
Gfischoff@bfslawfirm.com