**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| 25 JAY STREET, LLC, | : | Case No. 23-44083 (ESS) |
| | : | |
| Debtor. | : | |
| | : | |

-----------------------------------------------------------x

## DISCLOSURE STATEMENT TO LENDER'S CHAPTER 11 PLAN OF <u>LIQUIDATION FOR 25 JAY STREET, LLC</u>

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## IMPORTANT INFORMATION FOR YOU TO READ

This Disclosure Statement is provided pursuant to section 1125 of the Bankruptcy Code to all of the Debtor's known creditors, interest holders, and other parties in interest. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor typical of the holders of Claims or Interests to make an informed judgment in about the Lender's Chapter 11 Plan of Liquidation for 25 Jay Street, LLC (the "Plan").[1] A copy of the Plan is attached to this Disclosure Statement as Exhibit A and is incorporated herein by reference.

The Lender believes that the Plan is in the best interests of creditors, maximizes the value of the Debtor's Assets, and will result in a greater return to creditors than any other alternative. As a result, the Lender urges all creditors entitled to vote on the Plan to vote to accept the Plan. To be counted, your ballot must be completed, executed, and received by 5:00 p.m., prevailing Eastern Time, on [●], 2024, the deadline established in the Order by the Bankruptcy Court concerning solicitation of the Plan and Disclosure Statement submitted herewith (the "Voting Deadline"), unless extended in writing by counsel to the Lender. Ballots must be submitted by first-class mail or overnight mail to:

> Michelle Friedman
> Ballard Spahr LLP
> 919 N. Market Street, 11th Floor
> Wilmington, Delaware 19801

**ANY BALLOTS SUBMITTED BY FACSIMILE OR ELECTRONIC MAIL WILL BE NEITHER ACCEPTED NOR COUNTED UNLESS OTHERWISE AGREED, IN WRITING, BY COUNSEL TO THE LENDER.**

This Disclosure Statement and the exhibits attached hereto are the only documents to be used in connection with the solicitation of votes on the Plan. No person is authorized by the Lender in connection with the Plan or the solicitation of acceptances of the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits attached hereto or incorporated by reference or referred to herein. If given or made, such information or representation may not be relied upon as having been authorized by the Lender and should not be relied upon by you in reaching your decision as to how to vote. Holders of Claims and Interests may wish to consult with counsel before voting on the Plan.

---

[1] All capitalized terms used in this Disclosure Statement and not otherwise defined herein shall have the meanings given to them in the Plan.

**ALL CREDITORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING THE PLAN ATTACHED AS <u>EXHIBIT A</u>, PRIOR TO VOTING ON IT.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1125 AND 1129 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTOR SHOULD EVALUATE THE PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED. THE PLAN AND THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR.**

---

**IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THE PLAN OR THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY DEBTOR OR CHAPTER 11 TRUSTEE OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

---

**THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THE PLAN AND THIS DISCLOSURE STATEMENT. THE PLAN AND THIS DISCLOSURE STATEMENT WERE COMPILED FROM INFORMATION ABOUT THE DEBTOR DISCLOSED IN ITS BANKRUPTCY CASE AND OTHER PUBLICLY AVAILABLE SOURCES. THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY, ADEQUACY, OR MERITS OF THIS DISCLOSURE STATEMENT. NEITHER THE PLAN AND DISCLOSURE STATEMENT NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.**

---

**ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS ARE BASED UPON THE ANALYSES OF INFORMATION PERFORMED BY THE LENDER AND ITS ADVISORS.**

**NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, THE LENDER, OR ANY OTHER PARTY.  THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED.**

---

**THE LENDER BELIEVES THAT THE TREATMENT OF CREDITORS UNDER THE PLAN PROVIDES A GREATER RECOVERY THAN THAT LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE DEBTOR, INCLUDING A DISMISSAL OF THE DEBTOR'S CHAPTER 11 CASE OR GRANTING LENDER RELIEF FROM STAY, AND SUBSEQUENT FORECLOSURE ON THE DEBTOR'S ASSETS UNDER STATE LAW.  ACCORDINGLY, THE LENDER RECOMMENDS THAT CREDITORS SUPPORT AND VOTE TO ACCEPT THE PLAN.**

---

This Disclosure Statement contains forward-looking statements with respect to the Plan. Forward-looking statements discuss matters that are not historical facts.  Because they discuss future events or conditions, forward-looking statements often include words such as "anticipate," "believe," "estimate," "expect," "intend," "plan," "project," "target," "can," "could," "may," "should," "will," "would" or similar expressions.  Forward-looking statements should not be unduly relied upon.  They indicate the Lender's expectations about the future and are not guarantees.  Forward-looking statements speak only as of the date they are made and the Lender has no obligation to update them to reflect changes that occur after the date they are made. There are several factors which could cause results to differ significantly from expectations.

# ARTICLE I

# INTRODUCTION

The Lender submits this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016, in connection with the solicitation of votes on the Plan.  A copy of the Plan is attached as **Exhibit A** to this Disclosure Statement.

This Disclosure Statement sets forth certain information regarding the Debtor's history, operations, the Property, the Assets, significant events that led to the Chapter 11 Case, events that occurred during the Chapter 11 Case, and the liquidation and wind-down of the Debtor's affairs proposed by the Plan.  This description is based upon filings made by the Debtor in the Chapter 11 Case, documents produced by the Debtor to Lender, and other information available from public sources.  While every effort has been made to insure the accuracy of the information relied upon in preparing this Disclosure Statement, because the Lender was required to rely upon third party sources for the information, the Lender cannot guarantee the accuracy of all information contained herein.

This Disclosure Statement also describes the terms and provisions of the Plan, including the proposed treatment of Claims and Interests under the Plan.

# ARTICLE II

# SUMMARY OF THE PLAN

The purpose of the Plan is to maximize the value of the Debtor's Assets and thereby maximize distributions to Holders of Allowed Claims.

The Debtor's sole business is to own and operate a five-story mixed-use property consisting of approximately 35 residential units and 5 retail units located at 25 Jay Street, Brooklyn, New York 11201.  All of the Debtor's Assets (including the Property and the Debtor's Cash) are encumbered by a first priority Lien held by Lender.  As of the Petition Date, the aggregate amount of the Allowed Secured Claim of the First Lien Lender was approximately $26,451,886.44.   The Chapter 11 Case is a single asset real estate case within the meaning of section 101(51B) of the Bankruptcy Code.  The Debtor has Cash on hand in the amount of $239,198.97 as of September 30, 2024.  All of the Debtor's Cash on hand is subject to the first priority Liens of the Lender and constitutes the Lender's Cash Collateral.

Through this Plan, the Lender proposes the appointment of a Plan Trustee to (a) conduct a process to sell the Property to either the Lender, if a credit bid submitted by the Lender is the highest offer for the Property, or to a third party if a third party submits the highest and best offer for the Property, (b) investigate and pursue potential causes of action against the Debtor's insiders and affiliates, and (c) distribute funds to creditors, in accordance with the order of priority of their Claims.

| Class | Description | Treatment | Entitled to Vote | Estimated Amount of Allowed Claims | Estimated Percentage Recovery |
|---|---|---|---|---|---|
| Not Classified | Administrative Claims and Professional Fee Claims | Unimpaired; payment in full, in Cash, of the allowed amount of such claim (or as otherwise agreed) | No | $150,000.00 | 100% |
| Not Classified | Priority Tax Claims | Unimpaired; payment in full, in Cash, to the extent and in the manner allowed by section 1129 of the Bankruptcy Code (or as otherwise agreed) | No | $12,303.38 | 100% |
| 1 | Allowed Secured Claim of the First Lien Lender | Impaired; the Plan Trustee will transfer the Property and all related Assets to the Lender, in exchange for a credit bid, or all cash proceeds from a sale of the Property.  Lender will also receive all Cash remaining after payment of amounts necessary to make Distributions under the Plan | Yes | $26,451,886.44 | 75-95% |
| 2 | SBA Claim | If the Lender's credit bid is not the highest and best offer for the Property and proceeds from the Sale remain after payment of the Allowed Secured Claim of Lender in full, the SBA shall receive the value of its second lien on the Debtor's tangible personal property from the proceeds of the Sale remaining after payment of the Allowed Secured Claim of Lender in full.  If the Property is sold to the Lender as a result of a credit bid or there are no Sale Proceeds remaining after payment of the Allowed Secured Claim of Lender, the SBA Claim will be treated as a Class 4 General Unsecured Claim. | Yes | $1,752,733.11 | 1% |
| 3 | Other Secured Claims | Impaired; payment of a Pro Rata share of the Carve-Out | Yes | $21,275.32 | 100% |

| Class | Description | Treatment | Entitled to Vote | Estimated Amount of Allowed Claims | Estimated Percentage Recovery |
|-------|-------------|-----------|------------------|-----------------------------------|-------------------------------|
| 4 | General Unsecured Claims | Impaired; payment of Pro Rata share to Creditors other than the Lender of Carve-Out remaining after payment of Class 2 Claims in full, plus payment to Creditors, including the Lender, of a Pro Rata share of any recoveries on account of any Causes of Action | Yes | $1,796,863.94[2] | 1-10% |
| 5 | Interests | Impaired; Holders of Interests in Class 4 shall receive **no** distribution on account of such Interests; on the Effective Date, all Interests in Class 4 shall be deemed cancelled, null and void, and of no force and effect | No | N/A | 0% |

ALTHOUGH THE LENDER BELIEVES THAT ITS ESTIMATION OF CLAIMS AND RECOVERIES IS REASONABLE, THERE IS NO ASSURANCE THAT THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN EACH CLASS WILL NOT EXCEED THE ESTIMATED AGGREGATE AMOUNTS SHOWN HEREIN.

## ARTICLE III

## BACKGROUND ABOUT EVENTS PRECEDING THE BANKRUPTCY CASE AND TRANSPIRING DURING THE BANKRUTPCY CASE

### A.    The Debtor's Business and Commencement of the Chapter 11 Case

On November 7, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee, examiner, or statutory committee has been appointed.

---

[2] The Lender's General Unsecured Claim is unknown at this time and will be determined based on the result of the Sale process.

The Debtor's sole business is to own and operate a five-story mixed-use property consisting of approximately 35 residential units and 5 retail units located at 25 Jay Street, Brooklyn, New York 11201 (as more specifically described in the Mortgage, as hereinafter defined, the "Property").  The Chapter 11 Case is a "single asset real estate" within the meaning of Section 101(51B) of the Bankruptcy Code, as the Debtor acknowledged by checking the applicable box in its voluntary petition commencing this case.  The Debtor scheduled the Property as having an unknown value.

The Debtor filed Schedules with the Bankruptcy Court that detailed certain assets owned by the Debtor.  In addition to the Property, the Debtor's assets include Cash on hand and other personal property used in operations of the Property, and potential Litigation Claims to avoid and recover prepetition transfers.

As of September 30, 2024, the Debtor reported Cash on hand in the amount of $239,198.97, all of which constitutes the Lender's Cash Collateral and is subject to the Lender's perfected first-priority Liens.

### B.    The Debtor's Indebtedness to the Lender

The Lender holds valid and enforceable claims against the Debtor pursuant to, *inter alia*, the following: (a) a Loan Agreement dated January 29, 2020 (the "Loan Agreement"), by and between Citi Real Estate Funding Inc. (the "Original Lender") and the Debtor pursuant to which the Original Lender loaned the original principal amount of $18,500,000.00 to the Debtor (the "Loan"); (b) a Consolidated, Amended, Restated, and Consolidated Promissory Note dated January 29, 2020, in the principal amount of $18,500,000.00 and payable to Lender and its successors and assigns (the "Note"), which was subsequently assigned by Original Lender to Lender pursuant to that certain Allonge effective March 24, 2020 by Original Lender to Lender (the "Allonge"); (c) a Consolidated, Amended and Restated Mortgage and Security Agreement dated as of January 29, 2020 (the "Mortgage"), which was recorded with the Office of the City Register of the City of New York (the "Recorder") on February 7, 2020, as Instrument No. CRFN 2020000051005; (d) an Assignment of Leases and Rents dated January 29, 2020, which was recorded with the Recorder on February 7, 2020, as Instrument No. CRFN 2020000051006 (the "ALR"); (e) a UCC-1 Financing Statement with Debtor as debtor and Original Lender as secured party, recorded with the Recorder on February 14, 2020, as Instrument No. CRFN 2020000060290 (the "Original City Financing Statement"), and together with a UCC-3 Financing Statement assigning the Original City Financing Statement to Lender recorded with the Recorder on February 27, 2020, as Instrument No. CRFN 2020000179895, the collectively, the "City Financing Statement"); and (f) a UCC-1 Financing Statement filed with the New York Secretary of State on February 12, 2020, as financing statement number 202002120097551 (the "Original State Financing Statement"), and together with a UCC-3 Financing Statement assigning the Original State Financing Statement to Lender filed with the New York Secretary of State as financing statement number 202006238266218, the "State Financing Statement").

The Loan was securitized and validly assigned by Original Lender to Lender pursuant to the Allonge, a General Assignment effective March 24, 2020 by Original Lender to Lender (the "General Assignment"), an Assignment of Mortgage by Original Lender to Lender dated March

29, 2020 but effective as of March 24, 2020, which was recorded with the Recorder on June 23, 2020, as Instrument No. CRFN 2020000179893 (the "Assignment of Mortgage"), and an Assignment of Assignment of Leases and Rents by Original Lender to Lender dated March 29, 2020 but effective as of March 24, 2020, which was recorded with the Recorder on June 23, 2020, as Instrument No. CRFN 2020000179894 (the "Assignment of ALR").

The Loan Agreement, Note, Allonge, Mortgage, ALR, General Assignment, Assignment of Mortgage, Assignment of ALR, City Financing Statement and State Financing Statement together with all other documents evidencing the indebtedness of the Debtor to Lender are collectively referred to as the "Loan Documents."

Pursuant to the Loan Documents, the Lender holds a valid, enforceable, and unavoidable first-priority interest in and Lien against, *inter alia*, all of the Debtor's Assets, including, without limitation, all Cash, the Property, all leases of the Property, all rent, revenue, or profits generated from the operation and lease of the Property, certain related personal property, and the proceeds of all of the foregoing (as more particularly described in the Loan Documents, the "Collateral").

As of the Petition Date, the Debtor owed the amount of at least $26,451,886.44 to Lender. On April 15, 2024, the Lender timely filed a proof of claim [Claim No. 6] in the Chapter 11 Case. Interest has continued to accrue, and the Lender continues to incur attorneys' fees, expenses, and other expenses.

###    C.    The Lender's Foreclosure Action

The Debtor defaulted prior to the Petition Date by failing to make debt service payments to the Lender and granting the Small Business Administration a second lien against the Property to secure a loan obtained by the Debtor. Beginning no later than the monthly payment due for June 2021, and as early as the monthly payment date for April 2020, the Debtor failed on multiple occasions to pay the monthly debt service payments or to make the required deposits into accounts required under the Loan Documents. The Debtor also received $200,000 from a tenant that had commenced a bankruptcy case, and the Debtor was obligated under the Loan Documents to deposit that recovery into a specified account subject to the Lender's Liens. The Debtor failed to deposit the $200,000 it recovered into the specified account. The Lender provided multiple default notices to the Debtor beginning on May 1, 2020. On December 28, 2022, the Lender accelerated the Loan.

The Lender subsequently commenced a foreclosure action with respect to the Property in the United States District Court for the Eastern District of New York (the "District Court"), Civil Action No. 23-cv-1211 (the "Foreclosure Action").

###    D.    The Debtor's Prepetition Transfers to Insiders and Affiliates and the Lender's Motion to Appoint a Chapter 11 Trustee

The Debtor transferred an aggregate amount in excess of $1.4 million to JT Capital Investors LLC ("JT Capital"), JES Management, and Alfie Hospitality during the period from February 1, 2022 through Petition Date. Upon information and belief, JT Capital, JES

Management, and Alfie Hospitality are insiders or affiliates of the Debtor through common ownership by the Debtor's members, Joseph Torres, Sr. and Joseph Torres, Jr.  The Debtor's last transfer to JT Capital, in the amount of $90,000.00, was made on the Petition Date.  In addition, the Debtor transferred in excess of $100,000.00 to Kip Jacobs in October 2023, who is, upon information and belief, an artist by trade and friend of Joseph Torres, Jr.  These transfers may be avoidable as fraudulent transfers.

The funds transferred by the Debtor were largely the proceeds of loan that the Debtor obtained from the United States Small Business Administration ("SBA") under a COVID relief related program.  The Debtor received proceeds in the amount of $1,487,013.00 on February 9, 2022, from the SBA and deposited the proceeds in its operating account, which was then held at Signature Bank.  The Debtor made the transfers while failing to make the monthly debt service payments to the Lender.

Based on these substantial transfers, on March 29, 2024, the Lender filed a motion seeking the appointment of a chapter 11 trustee.  Thereafter, the Lender and the Debtor agreed to mediation, which is ongoing, and the motion seeking the appointment of a chapter 11 trustee has been continued several times.

The Lender and the Debtor have also entered into a series of orders governing the use of Cash Collateral.

## ARTICLE IV

## THE PLAN

### A.    General

THE FOLLOWING SUMMARY HIGHLIGHTS CERTAIN OF THE SUBSTANTIVE PROVISIONS OF THE PLAN, AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A FULL AND COMPLETE REVIEW OF THE PLAN.  THE LENDER ENCOURAGES ALL HOLDERS OF CLAIMS AND INTERESTS TO READ AND STUDY CAREFULLY THE PLAN, A COPY OF WHICH IS ATTACHED HERETO AS **EXHIBIT A**.

Section 1123 of the Bankruptcy Code provides that, except for Administrative Claims and Priority Tax Claims, a plan of liquidation must categorize claims against and interests in the debtor into individual classes.  Although the Bankruptcy Code gives a plan proponent significant flexibility in classifying claims and interests, section 1122 of the Bankruptcy Code dictates that a plan of liquidation may only place a claim or an interest into a class containing claims or interests that are substantially similar.

The Plan creates five Classes of Claims and one Class of Interests.  These Classes take into account the differing nature and priority of Claims against and Interests in the Debtor.  Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified for purposes of voting or receiving Distributions under the Plan (as is permitted by section 1123(a)(1) of the Bankruptcy Code), but are treated separately as unclassified Claims.

The Plan provides specific treatment for each Class of Claims and Interests. Only Holders of Claims that are Impaired under the Plan, and who will receive Distributions under the Plan are entitled to vote on the Plan.

Unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim or Interest under the Plan will be in full satisfaction, settlement, release and discharge of, and in exchange for, such claim or Interest.

The following discussion sets forth the classification and treatment of all Claims against, or Equity in, the Debtor.

**B.      Classification and Treatment of Claims and Interests**

If the Plan is confirmed by the Bankruptcy Court, (a) each Allowed Claim in a particular Class will receive the same treatment as the other Allowed Claims in such Class, whether or not the Holder of such Claim voted to accept the Plan, and (b) each Allowed Interest in a particular Class will receive the same treatment as the other Allowed Interests in such Class. Such treatment will be in exchange for and in full satisfaction, release, and discharge of, the Holder's respective Claims against or Interests in the Debtor, except as otherwise provided in the Plan. Moreover, upon Confirmation, the Plan will be binding on (a) all Holders of a Claim regardless of whether such Holders voted to accept the Plan, and (b) all Holders of an Interest.

**1.      Unclassified Claims**

**a.      Administrative Claims (Other Than Professional Fee Claims)**

Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, without interest, in Cash, as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Claim. Except as provided below for Professionals requesting compensation or reimbursement for Professional Fee Claims, requests for payment of Administrative Claims must be filed no later than thirty days after notice of the Effective Date. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the Administrative Claims Bar Date, shall be forever barred from asserting such Claims against the Debtor or its property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than the Fee Claim Deadline. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than twenty-one (21) days after any such application is filed.

### b.     U.S. Trustee Fees

The Debtor shall pay all applicable U.S. Trustee Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters an order (a) dismissing the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) approving a final decree closing the Chapter 11 Case.

### c.     Priority Tax Claims

Each Priority Tax Claims, if any, shall be paid in full, in Cash, upon the Effective Date or allowance of such Claim, whichever is later.

### 2.     Class 1 - Allowed Secured Claim of Lender

The Lender or its designee shall be entitled to credit bid in connection with the sale to be conducted by the Plan Trustee in accordance with section 363(k) of the Bankruptcy Code up to the Allowed Amount of the Allowed Secured Claim of Lender.  If the Lender's credit bid is the highest offer for the Property, the Trustee shall Transfer the Property to the Lender free and clear of all Liens, Claims, Encumbrances, and Interests, in exchange for the credit bid and, in addition to the transfer of the Property, within 90 days after the Effective Date, the Plan Trustee shall also distribute to the Lender any Cash remaining after payment of the Debtor's portion of any unpaid real property taxes against the Property as of the closing on the transfer of the Property to the Lender, Allowed Administrative Claims, Allowed Professional Claims, Allowed Priority Tax-Claims, and the Carve-Out, and the Lender shall have an Allowed Class 4 Unsecured Claim in the amount of the difference between (i) the Allowed Amount of the Allowed Secured Claim of Lender and (ii) the amount of the Lender's credit bid and the amount of the Cash Collateral distributed to the Lender by the Trustee, which deficiency Claim shall be treated as an Allowed Class 4 General Unsecured Claim and survive entry of the Confirmation Order and the occurrence of the Effective Date.

If the Lender's credit bid is not the highest offer for the Property, the Trustee shall Transfer the Property to the third-party purchaser free and clear of all Liens, Claims, Encumbrances, and Interests, in exchange for the cash payment and, within 90 days after the Effective Date, the Plan Trustee shall also distribute to the Lender any Cash remaining after payment of the Debtor's portion of any unpaid real property taxes against the Property as of the closing on the transfer of the Property to the Lender, Allowed Administrative Claims, Allowed Professional Claims, Allowed Priority Tax-Claims, and the Carve-Out, and the Lender shall have an Allowed Class 4 Unsecured Claim in the amount of the difference between (i) the Allowed Amount of the Allowed Secured Claim of Lender and (ii) the amount of Cash the Lender receives from the transfer of the Property to a third-party purchaser and the amount of the Cash Collateral distributed to the Lender by the Trustee, which deficiency Claim shall be treated as an Allowed Class 4 General Unsecured Claim and survive entry of the Confirmation Order and the occurrence of the Effective Date.

The Lender's first-priority Liens against the Property, Cash Collateral, Tenant Leases, all of the Debtor's personal property, rent paid under Tenant Leases, all other Collateral, and the proceeds thereof shall survive entry of the Confirmation Order and shall remain attached as first-

priority Liens to the Property, the Cash, Tenant Leases, rent paid under Tenant Leases, all other Collateral, and all replacements and proceeds thereof and, without limiting the foregoing, shall attach to the proceeds of any sale of the Property to a third-party purchaser.

Class 1 is Impaired, and the Lender is entitled to vote to accept or reject the Plan.

**3.      Class 2 – SBA Claim**

Class 2 consists of the SBA Claim in the amount of approximately $1,752,733.11.

If the Lender's credit bid is not the highest and best offer for the Property and proceeds from the Sale remain after payment of the Allowed Secured Claim of Lender in full, the SBA shall receive the value of its second lien on the Debtor's tangible personal property from the proceeds of the Sale remaining after payment of the Allowed Secured Claim of Lender in full.  If the Property is sold to the Lender as a result of a credit bid or there are no Sale Proceeds remaining after payment of the Allowed Secured Claim of Lender, the SBA Claim will be treated as a Class 4 General Unsecured Claim.

Class 2 is Impaired, and the SBA is entitled to vote to accept or reject the Plan.

**4.      Class 3 Other Secured Claims**

Other Secured Claims consist of any Claim (other than the Allowed Secured Claim of Lender) secured by a lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

Holders of Allowed Class 3 Other Secured Claims, if any, shall receive a Pro Rata share of the Carve-Out, on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed Claim.

Holders of Allowed Claims in Class 3 are Impaired under the Plan.  Each holder of a Class 2 Other Allowed Secured Claim is entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

**5.      Class 4 - General Unsecured Claims.**

Class 4 consists of the General Unsecured Claims against the Debtor.  Holders of Claims in Class 4 are Impaired.  Each holder of General Unsecured Claim is entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

Holders of Allowed Class 4 General Unsecured Claims, other than the Lender, shall receive a Pro Rata share of the Carve-Out remaining after payment of Class 3 Claims in full, on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed Claim.  In addition, Holders of Allowed Class 4 General Unsecured Claims, including

the Lender, shall receive a Pro Rata share of any recoveries made on account of any Causes of Action.

### 5.    Class 5 – Interests

Class 5 consist of all Interests in the Debtor.  Class 5 Interests are Impaired. The holders of Class 5 Interests will receive no Distribution.  On the Effective Date, all Class 5 Interests will be canceled, null and void and of no force and effect. The holders of Class 5 Interests are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

### C.    Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in the Plan, nothing shall affect, as applicable, the Debtor's rights, objections, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoff or recoupment.

### D.    Treatment of Executory Contracts and Unexpired Leases

On the Effective Date, the Tenant Leases other than the lease to Kip Jacobs shall be deemed assumed with a cure of $0 in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code.  All executory contracts and unexpired leases other than those Tenant Leases assumed under this Plan and not previously assumed, assumed and assigned, or rejected as of the Confirmation Date, but subject to the occurrence of the Effective Date, shall be deemed rejected pursuant to the provisions of section 365 of the Bankruptcy Code.  For clarity, the lease to Kip Jacobs shall be rejected as of the Effective Date.  The Plan shall constitute a motion to assume the Tenant Leases (other than the lease to Kip Jacobs) with a cure of $0.

If rejection, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, its Estate, or the Plan Trustee unless a proof of claim is filed with the Clerk of the Bankruptcy Court and served upon the Debtor and the Plan Trustee not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.  Any Claim arising from the rejection of an executory contract or unexpired lease shall be treated as a Class 3 General Unsecured Claim.

The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease of the Debtor entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

### E.    Conditions Precedent to Confirmation and the Effective Date of the Plan

### 1.    Conditions to Confirmation

The following are conditions precedent to Confirmation that must be satisfied or waived:

(a)     The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Lender, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

(b)     The proposed Confirmation Order shall be in form and substance reasonably acceptable to the Lender.

(c)     The Plan and all of the schedules, documents, and exhibits contained therein shall be filed with the Bankruptcy Court in form and substance reasonably acceptable to the Lender.

## 2.      Conditions to Occurrence of the Effective Date

The following are conditions precedent to the occurrence of the Effective Date that must be satisfied or waived:

(a)     The Confirmation Order shall be a Final Order.

(b)     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code has been made, or, if made, remains pending.

(c)     The appointment of the Plan Trustee shall have been confirmed by order of the Bankruptcy Court, which may be a term included in the Confirmation Order.

## 3.      Waiver of Conditions Precedent

Notwithstanding the foregoing, but subject to section 1127 of the Bankruptcy Code, the Lender reserves the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred before the taking of any other such action.

## 4.      Consequence of Non-Occurrence of Effective Date

If the Effective Date has not occurred by January 31, 2025, then upon motion by any party in interest and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before any Order granting such relief becomes a Final Order.  If the Confirmation Order is vacated pursuant to this Section, this Plan shall be deemed null and void in all respects and nothing contained herein shall constitute a waiver or release of any Claims by or against the Debtor.

### 5. Substantial Consummation

Substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall not be deemed to have occurred until and until all Administrative Claims and Priority Tax Claims have been paid in full or, to the extent not paid in full, funds sufficient to satisfy such Claims have been placed in a segregated reserve, and the Acquired Assets shall have been transferred to the Lender or its designee in exchange for a Credit Bid or sold to a third-party.

### F. Realty Transfer Tax

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer, or exchange of any securities, instruments, or documents, (b) the creation of any Lien, mortgage, deed of trust, or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the transfer or sale of any real or personal property of the Estate or the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment. Consistent with the foregoing, and in accordance with the Plan, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, including, without limitation any deed or other instrument transferring the Acquired Assets in accordance with the terms of the Plan, without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

### G. Exculpation

**No Exculpated Party shall have any liability to the Debtor or any holder of a Claim for any act or omission arising on or after the Petition Date through the Effective Date in connection with, related to, or arising out of the Chapter 11 Case, the Plan, the Disclosure Statement, pursuit of approval of the Disclosure Statement, solicitation of votes in favor of the Plan, pursuit of confirmation of the Plan, or the property distributed or otherwise deal with under the Plan except for any act or omission found by a Final Order to constitute a crime, actual fraud, willful misconduct, or gross negligence.**

### H. Retention of Jurisdiction by the Bankruptcy Code

The Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Notwithstanding confirmation of the Plan or occurrence of the Effective Date, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction and authority for all purposes to the

fullest extent permitted under applicable law, including, without limitation, the following purposes:

(a)     To determine any motion, adversary proceeding, Avoidance Action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(c)     To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     To hear and determine objections to the allowance of Claims (other than objections to the Allowed Secured Claim of Lender, which are waived and released under the Plan), whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e)     To hear and determine all applications for allowance of compensation and reimbursement by professionals under the Plan or under sections 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Court;

(f)     To hear and determine all motions requesting allowance of an Administrative Claim;

(g)     To determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

(h)     To hear and determine objections to Claims, all Causes of Action, Avoidance Actions, and other suit and adversary proceedings to recover assets of the Debtor and property of the Estate, wherever located, and to adjudicate any other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan, proceedings to adjudicate the allowance of Disputed Claims, proceedings to subordinate Claims, and all controversies and issues arising from or relating to any of the foregoing;

(i)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(j)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, modify and consummate the Plan, including any release, exculpation or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

(l)     To enter the Final Decree closing the Chapter 11 Case;

(m)     To enforce all orders previously entered by the Bankruptcy Court;

(n)     to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated; and

(o)     to issue orders in aid of execution, implementation or consummation of the Plan.


## ARTICLE V

## MEANS OF IMPLEMENTATION OF THE PLAN

### A.     Funding of the Plan

The Plan shall be funded from the Cash Collateral, the Carve-Out, and any recoveries made on account of Causes of Action.  The Acquired Assets shall be sold under the Plan to the Lender in exchange for the Credit Bid.  This Plan shall constitute a motion seeking to sell the Acquired Assets free and clear of all liens, claims, encumbrances, and interests.

### B.     Powers and Obligations of the Plan Trustee

On the Confirmation Date, the person or entity proposed by the Lender to serve in such capacity through the Plan Supplement (the "Plan Trustee") shall be appointed as the Plan Trustee to implement and effectuate the Plan.  On the Confirmation Date, the person or entity proposed by the Lender to serve in such capacity through the Plan Supplement (the "Plan Trustee") shall be appointed as the Plan Trustee to implement and effectuate the Plan.  The Plan Trustee shall be responsible for implementing the Plan, effectuating a sale of the Property, resolving all Claims other than the Allowed Claim of Lender, commencing and prosecuting Causes of Action, and making distributions pursuant to the Plan.  The Plan Trustee shall retain all rights with respect to the Assets necessary to implement the Plan and protect, conserve, and liquidate all Assets, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges, and any other evidentiary privileges relating to the Assets that, before the Effective Date, belonged to the Debtor under applicable law.  The Plan Trustee shall be compensated at its standard hourly rates, as such may be adjusted from time to time, subject to the cap imposed by the Bankruptcy Code and the approval of the Bankruptcy Court.  The Plan Trustee shall serve without bond, but subject to supervision and control of the Bankruptcy Court.  The Plan Trustee shall be deemed the Debtor's estate Representative in accordance with section 1123 of the Bankruptcy Code, and shall have all the powers, authority and responsibilities of a trustee specified in sections 704 and 1106 of the Bankruptcy Code, subject to the terms, requirements, and mandates of the Plan.  Without limiting the foregoing, the powers and duties of the Plan Trustee shall include all of the following:

1.      to make Distributions in accordance with the provisions of the Plan;

2.      to engage attorneys, accountants, consultants, agents, brokers, and other professionals to assist the Trustee with respect to the Trustee's responsibilities under the Plan, subject to the approval of the Bankruptcy Court;

3.      to pay the fees and expenses for the attorneys, consultants, agents, and other professionals engaged by the Trustee, and to pay all other expenses in connection with administering the Plan, subject to the approval of the Bankruptcy Court;

4.      to object to Claims, seek to subordinate Claims, and, subject to Bankruptcy Court approval of any proposed settlement after notice and a hearing, compromise or settle any objections to Claims;

5.      to commence litigation and otherwise prosecute Causes of Action and any appeals therefrom and, subject to Bankruptcy Court approval of any proposed settlement after notice and a hearing, compromise or settle any Causes of Action;

6.      to establish and maintain such bank accounts as the Plan Trustee may deem advisable on behalf of the Debtor;

7.      to file a motion with the Bankruptcy Court seeking to establish bid procedures and to sell the Assets free and clear of all Liens, claims, encumbrances, and interests, which motion shall be filed within 30 days after the Effective Date unless such period is extended by written agreement of the Plan Trustee and Lender;

8.      upon obtaining entry of an order by the Bankruptcy Court approving of a Sale of the Assets, to execute and deliver all documents, and take all actions, necessary to consummate the Plan, liquidate and sell the Assets, and wind-down the Debtor's business, including, without limitation, to effectuate the dissolution of the Debtor, with such sale to close within 6 months after the Effective Date unless such period is extended by written agreement of the Plan Trustee and Lender;

9.      to take action to wind down and terminate the corporate existence of the Debtor, if the Trustee determines so doing is advisable; and

10.     to take any and all other actions necessary, advisable, or appropriate, in the reasonable discretion of the Trustee, to implement, enforce, or effectuate the Plan, without further order of the Bankruptcy Court.

## C.      Limited Liability Company Actions, Effectuating Documents, Further Transactions

The Plan Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements,

instruments, and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan, including, without limitation, the sale of the Acquired Assets to Lender or its designee on account of the Credit Bid and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### D.     Authority to Act

On and after the Confirmation Date, all matters expressly provided for under this Plan that would otherwise require approval of the Plan Trustee, members, managers, or other owners, direct or indirect, of Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to applicable law, without any further vote, consent, approval, authorization, or other action by such Plan Trustee, members, managers, general partners, limited partners, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

### E.     Distributions under the Plan

The first Distribution shall occur on or as soon as practicable after the Effective Date.  To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Plan Trustee shall determine, subject to Court approval after notice and hearing.

### F.     Filing of Monthly and Quarterly Reports and Payment of U.S. Trustee Fees

The filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Trustee. All U.S. Trustee Fees shall be paid as set forth in the Plan and such obligation shall continue until such time as the Debtor's case is closed, dismissed, or converted.

### G.     Winding Down of Affairs.

Following the Effective Date, the Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down its affairs, except, however, the Plan Trustee may pursue any Assets or retained causes of action.

### H.     Closing the Case

After all Disputed Claims filed against the Debtor have become Allowed Claims or have been Disallowed, all Causes of Action have been prosecuted or settled, and all Assets have been liquidated and converted into Cash (other than those Assets that have been or may be abandoned), and such Cash has been distributed in accordance with the Plan, or at such earlier time as the Plan Trustee deems appropriate, the Plan Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VI
## EFFECT OF THE PLAN ON CLAIMS INTERESTS AND CAUSES OF ACTION

### A.     Binding Effect

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

### B.     Term of Injunctions or Stays

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

### C.     Preservation of Causes of Action

On the Effective Date, all Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor and Estate shall be transferred to and vested in the Plan Trustee, for the benefit of holders of all Allowed Claims, as set forth in the Plan unless expressly released, waived, or relinquished under the Plan, the Confirmation Order or other order of the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Plan Trustee will not pursue a Cause of Action against them.

### D.     Post-Confirmation Activity

At any time after the Effective Date, the Plan Trustee may conclude the winding down of the Debtor's affairs without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan, the Sale Order, or Confirmation Order.  Without limiting the foregoing, the Plan Trustee may pay any charges it incurs for taxes, disbursements, expenses, or related support services, in connection with his duties, after the Confirmation Date without application to and approval of the Bankruptcy Court.

## ARTICLE VII
## VOTING REQUIREMENTS

The Disclosure Statement Order, the Confirmation Hearing Notice, and the instructions attached to your Ballot should be read in connection with this section of this Disclosure Statement as they set forth in detail, among other things, procedures governing voting deadlines and objection deadlines.

### A.     Voting Deadline

This Disclosure Statement and the appropriate Ballot(s) are being distributed to all Holders of Claims that are entitled to vote on the Plan.  To facilitate vote tabulation, there is a

separate Ballot designated for each impaired voting Class; however, all Ballots are substantially similar in form and substance, and the term "Ballot" is used without intended reference to the Ballot of any specific Class of Claims.

IN ACCORDANCE WITH THE DISCLOSURE STATEMENT ORDER, TO BE CONSIDERED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN, ALL BALLOTS MUST BE RECEIVED BY THE BALLOT TABULATION AGENT NO LATER THAN 5:00 P.M. (EASTERN TIME) ON THE VOTING DEADLINE OF [●].  ONLY THOSE BALLOTS ACTUALLY RECEIVED BY THE BALLOT TABULATION AGENT BEFORE THE VOTING DEADLINE WILL BE COUNTED AS EITHER ACCEPTING OR REJECTING THE PLAN.  NO BALLOTS MAY BE SUBMITTED BY FACSIMILE OR ELECTRONIC MAIL, AND ANY BALLOTS SUBMITTED BY FACSIMILE OR ELECTRONIC MAIL WILL BE NEITHER ACCEPTED NOR COUNTED BY THE SOLICITATION AND TABULATION AGENT. BALLOTS SHOULD NOT BE SENT TO THE DEBTOR.

## B.      Holders of Claims or Interests Entitled to Vote

Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (1) the plan leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder thereof; or (2) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan (a) cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy), (b) reinstates the maturity of such claim or interest as it existed before the default, (c) compensates the holder of such claim or interest for any damages resulting from such holder's reasonable reliance on such legal right to an accelerated payment and (d) does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

In general, a holder of a claim or interest may vote to accept or reject a plan (except if such claim or interest is held by an insider of the Debtor) if (1) the claim or interest is "allowed," which means generally that it is not disputed, contingent or unliquidated, and (2) the claim or interest is impaired by a plan. However, if the holder of an impaired claim or interest will not receive any distribution under the plan on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan and provides that the holder of such claim or interest is not entitled to vote on the plan. If the claim or interest is not impaired, the Bankruptcy Code conclusively presumes that the holder of such claim or interest has accepted the plan and provides that the holder is not entitled to vote on the plan.

Except as otherwise provided in the Plan, the Holder of a Claim against one or more Debtor that is "impaired" under the Plan is entitled to vote to accept or reject the Plan if (1) the Plan provides a distribution in respect of such Claim; and (2) the Claim has been scheduled by the appropriate Debtor (and is not scheduled as disputed, contingent, or unliquidated), the holder of such Claim has timely filed a proof of claim or a proof of claim was deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline.

AS SET FORTH IN THE CONFIRMATION HEARING NOTICE AND IN THE DISCLOSURE STATEMENT ORDER, OTHER HOLDERS OF CLAIMS MUST FILE

MOTIONS TO HAVE THEIR CLAIMS TEMPORARILY ALLOWED FOR VOTING PURPOSES NO LATER THAN 4:00 P.M. PREVAILING EASTERN TIME ON [●].

A vote on the Plan may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C.    Vote Required for Acceptance by a Class

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan in accordance with the Disclosure Statement Order.

## D.    Voting Procedures

### 1.    Ballots

All votes to accept or reject the Plan with respect to any Class of Claims must be cast by properly submitting the duly completed and executed form of Ballot designated for such Class. Holders of impaired Claims voting on the Plan should complete and sign the Ballot in accordance with the instructions thereon, being sure to check the appropriate box indicating either acceptance or rejection of the Plan. In accordance with Bankruptcy Rule 3018(c), the Ballots to be used are Official Form No. 14.

ANY BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR THAT INDICATES BOTH ACCEPTANCE AND REJECTION OF THE PLAN WILL NOT BE COUNTED FOR PURPOSES OF DETERMINING ACCEPTANCE OR REJECTION OF THE PLAN.

ANY BALLOT RECEIVED THAT IS NOT SIGNED WILL BE AN INVALID BALLOT AND WILL NOT BE COUNTED FOR PURPOSES OF DETERMINING ACCEPTANCE OR REJECTION OF THE PLAN.

Ballots must be delivered to the Ballot Tabulation Agent at the address set forth herein so that it is received before the Voting Deadline.  In all cases, sufficient time should be allowed to ensure timely delivery.

### 2.    Withdrawal or Change of Votes on the Plan

A Ballot may be withdrawn by delivering a written notice of withdrawal to the Ballot Tabulation Agent, so that the Ballot Tabulation Agent receives the notice before the Voting Deadline.  In order to be valid, a notice of withdrawal must (a) specify the name of the creditor who submitted the Ballot to be withdrawn, (b) contain a description of the Claim(s) to which it relates and (c) be signed by the creditor in the same manner as on the Ballot.

If a creditor casts more than one Ballot voting the same Claim before the Voting Deadline, the last properly executed Ballot received by the Ballot Tabulation Agent before the Voting Deadline (as determined by the Ballot Tabulation Agent) will be deemed to reflect that

creditor's intent either to accept or reject the Plan.

### 3. Voting Multiple Claims

Separate forms of Ballots are provided for voting the various Classes of Claims.  A SEPARATE BALLOT MUST BE USED FOR EACH CLAIM.  Any Person who holds Claims in more than one voting Class or holds multiple Claims within the same voting Class is required to vote separately with respect to each Claim.  Please sign, and return in accordance with the instructions in this section, a separate Ballot with respect to each such Claim. In the event that a Ballot or a group of Ballots within a Class received from a single creditor partially rejects and partially accepts the Plan, such Ballots will NOT be accepted or counted.  That is, any Person who holds multiple Claims in a single Class is required to vote all of his or her Claims within that Class either to accept or reject the Plan.  Ballots partially accepting and partially rejecting the Plan may be objected to by Lender as Ballots not cast in good faith.

## ARTICLE VIII

## CONFIRMATION PROCEDURES

### A. Confirmation Hearing

The Confirmation Hearing will commence on [●], **2025, at** [●] prevailing Eastern time.

The Plan Objection Deadline is [●], **2025, at** [●] prevailing Eastern time.

All Plan Objections must be filed with the Bankruptcy Court and served on the Lender and certain other parties in accordance with the Disclosure Statement Order on or before the Plan Objection Deadline.

THE BANKRUPTCY COURT MAY NOT CONSIDER PLAN OBJECTIONS UNLESS THEY ARE TIMELY–SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.

**Plan Objections must be filed with the Clerk of the Bankruptcy Court and served on:**

Matthew G. Summers
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801

Gary C. Fischoff
Berger, Fischoff, Shumer, Wexler & Goodman, LLP
6901 Jericho Turnpike, Suite 230
Syosset, New York 11791

Office of the United States Trustee
Attn. Jeremy Sussman
One Bowling Green, Room 510
New York, New York 10004

## B.    Statutory Requirements for Confirmation of the Plan

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim either accept the Plan or receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  This requirement is often referred to as the "best interests" test.

In chapter 7 cases, unsecured creditors and interests holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been fully or any such payment is provided for:  (a) holders of secured claims (to the extent of the value of their collateral); (b) holders of priority claims; (c) holders of unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of interests.

The Plan Proponent believes that the value of any Distributions if the Bankruptcy Case was converted to a case under chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Plan because, among other reasons, none of the Cash would be available for Distribution to Creditors because it is subject to the Lender's first priority Liens and, further, Distributions in a chapter 7 case would be subject to payment of commissions to the trustee and delayed, thereby reducing the present value of such Distributions.  The proceeds received in a chapter 7 liquidation would likely be further depleted by the fees and expenses of a chapter 7 trustee and the trustee's professional advisors, as well as by the accrual of claims throughout the chapter 7 period that must be paid on a priority basis.

## ARTICLE IX

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Because the tax consequences to each Holder of a Claim against or Interest in the Debtor may vary depending upon such Holder of a Claim's or Interest's particular circumstances, all Holders of Claims against or Interests in the Debtor and other persons affected by the Plan should consult their own tax advisor for a complete analysis of the tax consequences resulting from the confirmation of this Plan.

# ARTICLE X

## PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Certain Bankruptcy Law Considerations

### 1.    Parties-in-Interest May Object to Plan Proponent's Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim in a particular class only if such claim is substantially similar to the other claims in such class.  The Lender believes that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code.  The Lender four classes of Claims and one class of Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class.  Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

### 2.    Failure to Satisfy Vote Requirement

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Lender intends to seek, as promptly as practicable thereafter, Confirmation of the Plan.  In the event that sufficient votes are not received, the Lender may seek relief from the automatic stay or conversion or dismissal of the Debtor's bankruptcy case.

### 3.    The Lender May Not Be Able to Secure Confirmation of the Plan

Section 1129 of the Bankruptcy Code sets forth the requirements for Confirmation of a chapter 11 plan, which include a finding by a bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) Confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting holders of claims within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that this Disclosure Statement, the balloting procedures and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

Confirmation of the Plan is also subject to certain conditions as described in the Plan.  If the Plan is not confirmed, it is unclear what Distributions, if any, Holders of Allowed Claims would receive with respect to Allowed Claims.

The Lender, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for Confirmation. Any such modifications could result in a less favorable treatment of any non-accepting Class, as well as of any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan. Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan, or no distribution of property whatsoever under the Plan.

4.    **Nonconsensual Confirmation of the Plan May Be Necessary**

Pursuant to section 1129(b) of the Bankruptcy Code, in the event that any impaired class of claims does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without taking into account the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes.  The Lender believes that the Plan satisfies these requirements and the Lender may request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.

5.    **The Debtor or Plan Trustee May Object to the Amount or Classification of a Claim**

Except as otherwise provided in the Plan, the Plan Trustee is granted the right to object to the amount or classification of any Claim under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied upon by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection may not receive its expected share of the estimated Distributions described in this Disclosure Statement

6.    **Risk of Non-Occurrence of the Effective Date**

Although the  believes that the Effective Date will occur promptly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

7.    **Contingencies Not to Affect Votes of Impaired Classes to Accept or Reject the Plan**

The Distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which could affect Distributions available to Holders of Allowed Claims under the Plan, shall not affect the validity of the vote taken by the Impaired Classes to accept or reject

23

the Plan, or require any sort of revote by the Impaired Classes.

If the Plan is not Confirmed or consummated, the alternatives include, in addition to the dismissal of the Bankruptcy Case, (a) liquidation under chapter 7 of the Bankruptcy Code, (b) dismissal of the Bankruptcy Case, or (c) preparation and presentation of an alternative chapter 11 plan.

### 8.      Risk Factors That May Affect Distributions Under the Plan

A number of unknown factors make certainty in creditor recoveries impossible.  Among other things, the Chapter 11 Trustee cannot know with any certainty, at this time, the number or amount of Claims that will ultimately be Allowed, and the Chapter 11 Trustee cannot know with any certainty, at this time, the amount that will ultimately be recovered on account of the Litigation Claims.

### 9.      Liquidation Under Chapter 7/Best Interest of Creditors

If the Plan is not Confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code.  The Lender believes that any such conversion would likely reduce any Distribution to Holders of Claims based on, among other things, the (i) increased costs of a chapter 7 case arising from the commissions payable to a chapter 7 trustee and fees payable to professional advisors to such trustee; and (ii) substantially longer period of time that would elapse until distributions could be made under chapter 7.  In addition, the Lender will seek relief from the automatic stay and pursue its state law remedies, including foreclosing on the Property, in the event the Plan is not confirmed and the case is converted to chapter 7. Distributions are possible under the Plan only because the Lender is, through the Plan, consenting to the use of Cash Collateral to fund such Distributions on the terms and conditions stated in the Plan.  Cash Collateral would not be available to fund such Distributions in the event of conversion or dismissal of the Chapter 11 Case.

November 27, 2024.                              Respectfully submitted,


                                               /s/ Laurel D. Roglen
                                               Matthew G. Summers*
                                               Laurel D. Roglen
                                               Ballard Spahr LLP
                                               919 N. Market Street, 11th Floor
                                               Wilmington, Delaware 19801
                                               Tel: (302) 252-4428
                                               Email: summersm@ballardspahr.com
                                               (*Admitted *pro hac vice*)

                                               *Wells Fargo Bank, National Association, as Trustee for the benefit of the registered holders of Benchmark 2020-B17 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B17*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re                                                                    :          Chapter 11
                                                                              :
24 JAY STREET, LLC,                                         :          Case No. 23-44083 (ESS)
                                                                              :
                                            Debtor.          :
                                                                              :
-----------------------------------------------------------x

## LENDER'S CHAPTER 11 PLAN OF LIQUIDATION
## FOR 25 JAY STREET, LLC

  Wells Fargo Bank, National Association, as Trustee for the benefit of the registered holders of Benchmark 2020-B17 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B17 (together with its successors and assigns, the "Lender"), by and through its undersigned counsel, hereby files this Lender's Chapter 11 Plan of Liquidation for 25 Jay Street, LLC.

## ARTICLE I.
## INRODUCTION & RULES OF INTERPRETATION

  1.1  The Debtor commenced its Chapter 11 Case by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 7, 2023.  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is authorized to operate its business as a debtor in possession.  A committee of unsecured creditors has not been appointed in the Chapter 11 Case.

  1.2  The Debtor's sole business is to own and operate a five-story mixed-use property consisting of approximately 35 residential units and 5 retail units located at 25 Jay Street, Brooklyn, New York 11201.  All of the Debtor's Assets (including the Property and the Debtor's Cash) are encumbered by a first priority mortgage held by Lender.  The Chapter 11 Case is a single asset real estate case within the meaning of section 101(51B) of the Bankruptcy Code.

  1.3  Through this Plan, the Lender proposes the appointment of a Plan Trustee to (a) conduct a process to sell the Property to either the Lender, if any credit bid submitted by the Lender is the highest offer for the Property, or to a third party if a third party submits the highest and best offer for the Property, (b) investigate and pursue potential causes of action against the Debtor's insiders and affiliates, and (c) distribute funds to creditors, in accordance with the order of priority of their Claims.

  1.4  Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

1.5     Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

1.6     The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

# ARTICLE II
## DEFINITIONS

The following terms, when used in this Plan, the Disclosure Statement (except as otherwise provided therein) or any subsequent amendments or modifications thereof, and in addition to those terms defined in the text of the Plan, shall have the respective meanings hereinafter set forth.

2.1     "Administrative Claim" means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the Debtor's business; (b) Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code; and (c) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

2.2     "Administrative Claims Bar Date" means the date that is thirty (30) days after notice of the occurrence of the Effective Date is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.  The notice of the occurrence of the Effective Date shall be sufficient notice of the Administrative Claims Bar Date.

2.3     "Allowed" with respect to a Claim, means the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by a Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such Claim has been allowed); or (d) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order, after notice and a hearing. A proof of Claim that is not timely filed (or not deemed timely filed) shall not be "Allowed" for purposes of distribution or voting under the Plan.

2.4 "Allowed Secured Claim of Lender" shall mean the Allowed Claim of Lender against the Debtor, which is secured by a first-Priority Lien on all Assets of the Debtor, which shall be calculated by adding all postpetition interest, attorneys' fees, late fees, tax, insurance, and other protective advances, and other fees and costs chargeable under the Loan Documents. As of the Petition Date, the amount of Lender's Secured Claim was $26,451,886.44.

2.5 "Assets" means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

2.6 "Avoidance Actions" shall mean all claims and causes of action that the Trustee, Debtor, or the Debtor's estate have pursuant sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.

2.7 "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Chapter 11 Case concerning the Debtor.

2.8 "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York or such other court having jurisdiction over the Chapter 11 Case.

2.9 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, in effect and applicable to the Chapter 11 Case.

2.10 "Bar Date" means April 15, 2024, or, for claims of governmental units, May 6, 2024, the dates fixed by the Bankruptcy Court by Order entered February 23, 2024 [Dkt. No. 50] and subject to the terms and conditions stated therein, unless the Bankruptcy Court has set a different date by which a specific Creditor must file a proof of Claim, in which case it means, for the specific Creditor, such different date set by the Bankruptcy Court in the order approving such Bar Date or otherwise.

2.11 "Bidding Procedures" means the procedures for conducting the sale of the Property and related Assets to be developed by the Plan Trustee and subject to Bankruptcy Court approval after notice, a hearing, and an opportunity for Creditors and other parties in interest to object.

2.12 "Broker" means a licensed real estate broker selected by the Plan Trustee and employed with approval by the Bankruptcy Court after notice, a hearing, and an opportunity for Creditors and other parties in interest to object.

2.13 "Carve-Out" means Cash Collateral remaining in an amount not to exceed [$15,000.00] after payment of all Administrative Claims, Professional Fee Claims, compensation to the Broker, compensation to the Plan Trustee, the Debtor's portion of any unpaid real property taxes as of the date of closing and other customary closing costs, and Priority Tax Claims.

2.14 "Cash" means cash and cash equivalents in U.S. dollars.

2.15    "Cash Collateral" shall mean the cash collateral of Lender, as defined by §363(a) of the Bankruptcy Code, including, without limitation, all rents and revenue generated by the Property, the Tenant Leases, and proceeds thereof.

2.16    "Causes of Action" means any and all claims, rights, actions, choses in action, suits, causes of action, Liens, judgments and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, including, without limitation, Avoidance Actions, whether arising prior to, or after, the Petition Date and in each case whether known or unknown, in law, equity or otherwise.  Without limiting the foregoing, Causes of Action shall include all rights, actions, suits, and causes of action (including Avoidance Actions) that exist against JT Capital Investors LLC, JES Management, Alfie Hospitality, Joseph Torres, Joseph Torres, Jr., and Kip Jacobs.

2.17    "Chapter 11 Case" means the case commenced by the Debtor on November 10, 2023, under Chapter 11 of the Bankruptcy Code, administered under case number 23-44083.

2.18    "Claim" means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.19    "Class" means a category of Claims or Interests described in Article III hereof.

2.20    "Collateral" means all property and interests in property of the Debtor or the Estate securing the Allowed Secured Claim of Lender.  Without limiting the foregoing, all of the Assets constitute Collateral.

2.21    "Confirmation" means the Bankruptcy Court's confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code.

2.22    "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket corresponding to the Chapter 11 Case.

2.23    "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider Confirmation.

2.24    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan, or any amendment thereto, pursuant to section 1129 of the Bankruptcy Code, and approving of the Sale of the Property, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

2.25    "Creditor" means any Person who: (a) holds a Claim against the Debtor that arose prior to the Petition Date; (b) holds a Claim against the Debtor, which arose after the Petition Date,

other than an Administrative Claim of the type specified in Bankruptcy Code section 503(b); or (c) holds a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

2.26    "Disallowed" means, when referring to a Claim or Interest, a Claim (including a claim listed by the Debtor in its Schedules) or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

2.27    "Disclosure Statement" means the disclosure statement (as such may be modified, amended, revised, or supplemented), and all exhibits, annexed thereto, filed by the Lender in connection with the Chapter 11 Case pursuant to section 1125 of the Bankruptcy Code, and approved by an order of the Bankruptcy Court as containing adequate information as that term is defined in section 1125(a)(1) of the Bankruptcy Code.

2.28    "Disputed Claim" means a Claim that is not an Allowed Claim nor a disallowed Claim, and is any Claim, proof of which was filed, or an Administrative Claim or other unclassified Claim, which is the subject of a dispute under the Plan or as to which Claim the Trustee, has interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed (or deemed timely or properly filed).

2.29    "Distribution" means any distribution made pursuant to the terms of this Plan or other order of court.

2.30    "Distribution Address" means the address set forth in the applicable proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). If no proof of claim is or has been filed with respect to a particular Claim, "Distribution Address" means the address set forth in the Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

2.31    "Distribution Date" means any date on which a Distribution is made to holders of Allowed Claims under this Plan, or as otherwise agreed. The first Distribution shall occur on or as soon as practicable after the Effective Date or as otherwise ordered by the Court.  To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Trustee shall determine, subject to Court approval after notice and hearing.

2.32    "Effective Date" means the date on which closing on a sale of the Property occurs.

2.33    "Encumbrances" means, collectively, any and all security interests, Liens, pledges, Claims, levies, charges, escrows, encumbrances, options, rights of first refusal, transfer restrictions, conditional sale contracts, title retention contracts, mortgages, hypothecations, indentures, security agreements or other agreements, arrangements, contracts, commitments, understandings or obligations of any kind whatsoever, whether written or oral.

2.34    "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Petition Date.

2.35    "Excluded Assets" means the (a) Causes of Action other than those arising under a Lease; (b) all corporate records of the Debtor, including minute books and organizational documents; (c) the right to receive tax refunds for the period arising before the Effective Date; and (d) such other Assets as may be agreed between the Debtor and the Lender.

2.36    "Exculpated Parties" collectively means the Lender, its Professionals, and its agents, including the servicer and special servicer for the Lender's loan to the Debtor, and each of their respective officers and directors.

2.37    "Fee Claim Deadline" means the deadline for all Professionals or other Persons to file an application for final allowance of compensation and reimbursement of Professional Fee Claims for services rendered before the Effective Date, which deadline shall be the date which is thirty (30) days after the Effective Date.

2.38    "Fee Application" means the final fee application and/or an application for payment of reasonable fees and expenses filed under section 503(b) of the Bankruptcy Code by any parties seeking payment of Professional Fee Claims and/or reimbursement of expenses, as applicable, which shall be filed in accordance with Section 4.2(c)(ii) hereof.

2.39    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.40    "General Unsecured Claim" means a Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim or a Secured Claim.

2.41    "Impaired" means any Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

2.42    "Interest" means the general partnership or limited partnership rights and interests as of the Petition Date of any Person in the Debtor.

2.43    "Lender" means Wells Fargo Bank, National Association, as Trustee for the benefit

of the registered holders of Benchmark 2020-B17 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B17 and its successors and assigns.

2.44    "Lien" means any charge against, security interest in, encumbrance upon, or other interest in or against property of the Debtor to secure payment of a debt or performance of an obligation by the Debtor.

2.45    "Other Secured Creditors" means Creditors other than the Lender that assert claims secured or partially secured by a Lien against the Property lower in priority to the Lender's first priority Lien and security interests against the Property.

2.46    "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other entity.

2.47    "Petition Date" means November 7, 2023, the date the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.48    "Plan" means this plan of liquidation and any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized amendment or modification.

2.49    "Plan Supplement" means any documents, agreements, schedules, and exhibits, specified in this Plan, including, without limitation, the proposed Plan Trustee, to be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline, provided that the Debtor may amend such Plan Supplement at any time prior to the Confirmation Hearing.

2.50    "Priority Tax Claim" means a Claim or a portion of a Claim, which is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

2.51    "Property" means the improved commercial real property located at 25 Jay Street, Brooklyn, New York, as well as all related personal property, rights, leases, Tenant Leases, and licenses related to the operation of the Property.

2.52    "Pro Rata" means, at any time, the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular Class at such time, including Disputed Claims at such time (a) as calculated by the Liquidation Trustee on or before any Distribution Date; or (b) as determined or estimated by the Bankruptcy Court.

2.53    "Professionals" means an entity (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement of expenses by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

2.54    "Professional Fee Claims" means any Claim of (a) a Professional, retained in the

Chapter 11 Case, pursuant to sections 327 or 328 of the Bankruptcy Code, for compensation or reimbursement of costs and expenses relating to services incurred in such capacity after the Petition Date, but prior to and including the Effective Date, when and to the extent any such Claim is Allowed by the Bankruptcy Court pursuant to sections 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code, or (b) a Person seeking compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

2.55     "Representative" means any person who is authorized to act on behalf of another.

2.56     "Sale" means the sale of the Assets to be effectuated pursuant to this Plan.

2.57     "SBA" means the United States Small Business Administration.

2.58     "SBA Claim" means the claim asserted by the SBA in the amount of $1,752,733.11, which claim the SBA asserts is secured by a second Lien (junior to the Lender's Lien) against the Debtor's tangible personal property (other than Cash).

2.59     "Schedules" means the Schedules of Assets and Liabilities filed by the Debtor and any amendments thereto.

2.60     "Secured Claim" means a Claim secured by a Lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

2.61     "Tenant Leases" means shall mean the existing leases pursuant to which tenants lease part of the Property owned by the Debtor.

2.62     "U.S. Trustee" means the United States Trustee for Region 2.

2.63     "U.S. Trustee Fees" means all fees and charges assessed against the Estate by the U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code.

2.64     "Unclassified Claims" means Administrative Claims and Priority Tax Claims.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    **Administrative Expense Claims**

Administrative Claims shall be paid in full, in Cash, on the Effective Date or within five (5) business days after allowance of such Administrative Claim, whichever is later, or upon such other terms as may be agreed upon by the holder of the applicable Administrative Claim and the Debtor.  Administrative Claims include, without limitation, all Allowed Claims (a) the actual and necessary postpetition costs and expenses incurred by the Debtor in preserving the Estate or operating its business, (b) Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code, (c) U.S. Trustee Fees, and (d) any allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court. Administrative Claims shall be paid from Cash Collateral.  Any unpaid real property taxes assessed against the Property as of the Effective Date shall be apportioned between the Debtor and Lender as of the Effective Date of the Plan, and the Debtor's portion shall be paid from Cash Collateral at closing on the transfer to the Lender.

a.    **Administrative & Professional Fee Claims Bar Date**

Except as provided below for Professionals requesting compensation or reimbursement for Professional Fee Claims, requests for payment of Administrative Claims must be filed no later than thirty days after notice of the Effective Date.  Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the Administrative Claims Bar Date, shall be forever barred from asserting such Claims against the Debtor or its property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than the Fee Claim Deadline.  Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than twenty-one (21) days after any such application is filed.

b.    **U.S. Trustee Fees**

The Debtor shall pay all applicable U.S. Trustee Fees, in accordance with the terms of the Plan, until such time as the Bankruptcy Court enters an order (a) dismissing the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) approving a final decree closing the Chapter 11 Case.

3.2     **Priority Tax Claims**

Each Priority Tax Claims, if any, shall be paid in full, in Cash, upon the Effective Date or allowance of such Claim, whichever is later.

3.3     **Class 1 - Allowed Secured Claim of Lender**

Class 1 consists of the Allowed Secured Claim of Lender.  The Lender's holds an Allowed Claim in the amount of the Allowed Secured Claim of Lender which is secured by a first priority Liens and security interests in the Collateral, which includes, without limitation, the Tenant Leases, the Property, and all of the Debtor's Cash.

The Lender or its designee shall be entitled to credit bid in connection with the sale to be conducted by the Plan Trustee in accordance with section 363(k) of the Bankruptcy Code up to the Allowed Amount of the Allowed Secured Claim of Lender.  If the Lender's credit bid is the highest offer for the Property, the Trustee shall Transfer the Property to the Lender free and clear of all Liens, Claims, Encumbrances, and Interests, in exchange for the credit bid and, in addition to the transfer of the Property, within 90 days after the Effective Date, the Plan Trustee shall also distribute to the Lender any Cash remaining after payment of the Debtor's portion of any unpaid real property taxes against the Property as of the closing on the transfer of the Property to the Lender, Allowed Administrative Claims, Allowed Professional Claims, Allowed Priority Tax-Claims, and the Carve-Out, and the Lender shall have an Allowed Class 4 Unsecured Claim in the amount of the difference between (i) the Allowed Amount of the Allowed Secured Claim of Lender and (ii) the amount of the Lender's credit bid and the amount of the Cash Collateral distributed to the Lender by the Trustee, which deficiency Claim shall be treated as an Allowed Class 4 General Unsecured Claim and survive entry of the Confirmation Order and the occurrence of the Effective Date.

If the Lender's credit bid is not the highest offer for the Property, the Trustee shall Transfer the Property to the third-party purchaser free and clear of all Liens, Claims, Encumbrances, and Interests, in exchange for the cash payment and, within 90 days after the Effective Date, the Plan Trustee shall also distribute to the Lender any Cash remaining after payment of the Debtor's portion of any unpaid real property taxes against the Property as of the closing on the transfer of the Property to the Lender, Allowed Administrative Claims, Allowed Professional Claims, Allowed Priority Tax-Claims, and the Carve-Out, and the Lender shall have an Allowed Class 4 Unsecured Claim in the amount of the difference between (i) the Allowed Amount of the Allowed Secured Claim of Lender and (ii) the amount of Cash the Lender receives from the transfer of the Property to a third-party purchaser and the amount of the Cash Collateral distributed to the Lender by the Trustee, which deficiency Claim shall be treated as an Allowed Class 4 General Unsecured Claim and survive entry of the Confirmation Order and the occurrence of the Effective Date.

The Lender's first-priority Liens against the Property, Cash Collateral, Tenant Leases, all of the Debtor's personal property, rent paid under Tenant Leases, all other Collateral, and the proceeds thereof shall survive entry of the Confirmation Order and shall remain attached as first-priority Liens to the Property, the Cash, Tenant Leases, rent paid under Tenant Leases, all other Collateral, and all replacements and proceeds thereof and, without limiting the foregoing, shall

attach to the proceeds of any sale of the Property to a third-party purchaser.

Nothing contained in this Plan shall reduce, modify, discharge, enjoin, limit, or impair the liability or obligations of any third-parties to the Lender in connection with the Loan (including, without limitation, the liability or obligations of any guarantors of the Loan).

Class 1 is Impaired, and the Lender is entitled to vote to accept or reject the Plan.

### 3.4    Class 2 – SBA Claim

Class 2 consists of the SBA Claim in the amount of approximately $1,752,733.11.

If the Lender's credit bid is not the highest and best offer for the Property and proceeds from the Sale remain after payment of the Allowed Secured Claim of Lender in full, the SBA shall receive the value of its second lien on the Debtor's tangible personal property from the proceeds of the Sale remaining after payment of the Allowed Secured Claim of Lender in full.  If the Property is sold to the Lender as a result of a credit bid or there are no Sale Proceeds remaining after payment of the Allowed Secured Claim of Lender, the SBA Claim will be treated as a Class 4 General Unsecured Claim.

Class 2 is Impaired, and the SBA is entitled to vote to accept or reject the Plan.

### 3.5    Class 3 – Other Secured Claims

Other Secured Claims consist of any Claim (other than the SBA Claim and the Allowed Secured Claim of Lender) secured by a lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

Holders of Allowed Class 3 Other Secured Claims, if any, shall receive a Pro Rata share of the Carve-Out, on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed Claim.

Holders of Allowed Claims in Class 3 are Impaired under the Plan.  Each holder of a Class 2 Other Allowed Secured Claim is entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

### 3.5    Class 4 - General Unsecured Claims.

Class 4 consists of the General Unsecured Claims against the Debtor.  Holders of Claims in Class 4 are Impaired.  Each holder of General Unsecured Claim is entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

Holders of Allowed Class 4 General Unsecured Claims, other than the Lender, shall receive a Pro Rata share of the Carve-Out remaining after payment of Class 3 Claims in full, on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed

Claim.  In addition, Holders of Allowed Class 4 General Unsecured Claims, including the Lender, shall receive a Pro Rata share of any recoveries made on account of any Causes of Action.

3.6     **Class 5 – Interests**

Class 5 consists of all Interests in the Debtor.  Class 5 Interests are Impaired. The holders of Class 5 Interests will receive no Distribution.  On the Effective Date, all Class 5 Interests will be canceled, null and void and of no force and effect. The holders of Class 5 Interests are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

3.7     **Reservation of Rights Regarding Claims**

Except as otherwise explicitly provided in the Plan, nothing shall affect, as applicable, the Debtor's rights, objections, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoff or recoupment.

**ARTICLE IV**
**IMPLEMENTATION OF THE PLAN**

4.1     **Funding of the Plan**

The Plan shall be funded from the Sale Proceeds, Cash Collateral, the Carve-Out, and any recoveries made on account of Causes of Action.  The Property and all related Assets shall be sold under the Plan.

4.2     **Powers and Obligations of the Plan Trustee**

On the Confirmation Date, the person or entity proposed by the Lender to serve in such capacity through the Plan Supplement (the "Plan Trustee") shall be appointed as the Plan Trustee to implement and effectuate the Plan.  The Plan Trustee shall be responsible for implementing the Plan, establish bidding procedures for a sale of the Assets (subject to Bankruptcy Court approval), effectuating the sale of the Property (subject to further Bankruptcy Court approval of such sale), resolving all Claims other than the Allowed Claim of Lender, commencing and prosecuting Causes of Action, and making distributions pursuant to the Plan.  The Plan Trustee shall retain all rights with respect to the Assets necessary to implement the Plan and protect, conserve, and liquidate all Assets, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges, and any other evidentiary privileges relating to the Assets that, before the Effective Date, belonged to the Debtor under applicable law.  The Plan Trustee shall be compensated at its standard hourly rates, as such may be adjusted from time to time, subject to the cap imposed by the Bankruptcy Code and the approval of the Bankruptcy Court.  The Plan Trustee shall serve without bond, but subject to supervision and control of the Bankruptcy Court.  The Plan Trustee shall be deemed the Debtor's estate Representative in accordance with section 1123 of the Bankruptcy Code, and shall have all the powers, authority and responsibilities of a trustee specified in sections 704 and 1106 of the Bankruptcy Code, subject to the terms, requirements, and mandates of the Plan.  Without limiting the foregoing, the powers and duties of the Plan Trustee shall include all of the following:

1.     to make Distributions in accordance with the provisions of the Plan;

2.      to engage attorneys, accountants, consultants, agents, brokers, and other professionals to assist the Trustee with respect to the Trustee's responsibilities under the Plan, subject to the approval of the Bankruptcy Court;

3.      to pay the fees and expenses for the attorneys, consultants, agents, and other professionals engaged by the Trustee, and to pay all other expenses in connection with administering the Plan, subject to the approval of the Bankruptcy Court;

4.      to object to Claims, seek to subordinate Claims, and, subject to Bankruptcy Court approval of any proposed settlement after notice and a hearing, compromise or settle any objections to Claims;

5.      to commence litigation and otherwise prosecute Causes of Action and any appeals therefrom and, subject to Bankruptcy Court approval of any proposed settlement after notice and a hearing, compromise or settle any Causes of Action;

6.      to establish and maintain such bank accounts as the Plan Trustee may deem advisable on behalf of the Debtor;

7.      to file a motion with the Bankruptcy Court seeking to establish bid procedures and to sell the Assets free and clear of all Liens, claims, encumbrances, and interests;

8.      upon obtaining entry of an order by the Bankruptcy Court approving of a Sale of the Assets, to execute and deliver all documents, and take all actions, necessary to consummate the Plan, liquidate and sell the Assets, and wind-down the Debtor's business, including, without limitation, to effectuate the dissolution of the Debtor;

9.      to take action to wind down and terminate the corporate existence of the Debtor, if the Trustee determines so doing is advisable; and

10.     to take any and all other actions necessary, advisable, or appropriate, in the reasonable discretion of the Trustee, to implement, enforce, or effectuate the Plan, without further order of the Bankruptcy Court.

**4.3     Limited Liability Company Actions, Effectuating Documents, Further Transactions**

The Plan Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements, instruments, and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan, including,

without limitation, the sale of the Property, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 4.4    Authority to Act

On and after the Confirmation Date, all matters expressly provided for under this Plan that would otherwise require approval of the Plan Trustee, members, managers, or other owners, direct or indirect, of Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to applicable law, without any further vote, consent, approval, authorization, or other action by such Plan Trustee, members, managers, general partners, limited partners, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

### 4.5    Distributions under the Plan

The first Distribution shall occur on or as soon as practicable after the Effective Date.  To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Plan Trustee shall determine, subject to Court approval after notice and hearing.

### 4.6    Filing of Monthly and Quarterly Reports and Payment of U.S. Trustee Fees

The filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Trustee.  All U.S. Trustee Fees shall be paid as set forth in the Plan and such obligation shall continue until such time as the Debtor's case is closed, dismissed, or converted.

### 4.7    Winding Down of Affairs.

Following the Effective Date, the Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down its affairs, except, however, the Plan Trustee may pursue any Assets or retained causes of action.

### 4.8    Closing the Case

After all Disputed Claims filed against the Debtor have become Allowed Claims or have been Disallowed, all Causes of Action have been prosecuted or settled, and all Assets have been liquidated and converted into Cash (other than those Assets that have been or may be abandoned), and such Cash has been distributed in accordance with the Plan, or at such earlier time as the Plan Trustee deems appropriate, the Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V
## EFFECT OF THE PLAN ON CLAIMS INTERESTS AND CAUSES OF ACTION

### 5.1    Binding Effect

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the

Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

5.2     **Term of Injunctions or Stays**

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

5.3     **Preservation of Causes of Action**

On the Effective Date, all Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor and Estate shall be transferred to and vested in the Trustee, for the benefit of holders of all Allowed Claims, as set forth in the Plan unless expressly released, waived, or relinquished under the Plan, the Confirmation Order or other order of the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Trustee will not pursue a Cause of Action against them.

5.4     **Post-Confirmation Activity**

At any time after the Effective Date, the Plan Trustee may conclude the winding down of the Debtor's affairs without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan or Confirmation Order.  Without limiting the foregoing, the Plan Trustee may pay any charges it incurs for taxes, disbursements, expenses, or related support services, in connection with his duties, after the Confirmation Date without application to and approval of the Bankruptcy Court.

**ARTICLE VI**
**EXECUTORY CONTRACTS**

6.1     **Executory Contracts and Unexpired Leases.**

On the Effective Date, the Tenant Leases other than the lease to Kip Jacobs shall be deemed assumed with a cure of $0 in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code.  All executory contracts and unexpired leases other than those Tenant Leases assumed under this Plan and not previously assumed, assumed and assigned, or rejected as of the Confirmation Date, but subject to the occurrence of the Effective Date, shall be deemed rejected pursuant to the provisions of section 365 of the Bankruptcy Code.  For clarity, the lease to Kip Jacobs shall be rejected as of the Effective Date.  The Plan shall constitute a motion to assume the Tenant Leases (other than the lease to Kip Jacobs) with a cure of $0.

6.2     **Rejection Damages Bar Date.**

If rejection by the Debtor, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, its Estate, or the Plan Trustee unless a proof of claim is filed with the Clerk of the Bankruptcy Court and served upon the Debtor and the Trustee not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.  Any Claim arising from the rejection of an executory contract or unexpired lease shall be treated as a Class 4 General Unsecured Claim.

6.3      **Effect of Post-Confirmation Rejection**

The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease of the Debtor entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

**ARTICLE VII**
**EXCULPATION**

No Exculpated Party shall have any liability to the Debtor or any holder of a Claim for any act or omission arising on or after the Petition Date through the Effective Date in connection with, related to, or arising out of the Chapter 11 Case, the Plan, the Disclosure Statement, pursuit of approval of the Disclosure Statement, solicitation of votes in favor of the Plan, pursuit of confirmation of the Plan, or the property distributed or otherwise deal with under the Plan except for any act or omission found by a Final Order to constitute a crime, actual fraud, willful misconduct, or gross negligence.

**ARTICLE VIII**
**OTHER PROVISIONS**

8.1      **Realty Transfer Tax**

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer, or exchange of any securities, instruments, or documents, (b) the creation of any Lien, mortgage, deed of trust, or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the transfer or sale of any real or personal property of the Estate or the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.  Consistent with the foregoing, and in accordance with the Plan, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be

16

ordered and directed to accept such instrument, including, without limitation any deed or other instrument transferring the Property and any other Assets in accordance with the terms of the Plan, without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

### 8.2    Retention of Jurisdiction

The Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code.  Notwithstanding confirmation of the Plan or occurrence of the Effective Date, pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction and authority for all purposes to the fullest extent permitted under applicable law, including, without limitation, the following purposes:

(a)    To determine any motion, adversary proceeding, Avoidance Action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date, including without limitation, any application seeking to employ a broker to market and sell the Property, a motion to approve bidding procedures, and a motion to approve the sale of the Property in accordance with the Plan;

(b)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(c)    To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    To hear and determine objections to the allowance of Claims (other than objections to the Allowed Secured Claim of Lender, which are waived and released under the Plan), whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e)    To hear and determine all applications for allowance of compensation and reimbursement by professionals under the Plan or under sections 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Court;

(f)    To hear and determine all motions requesting allowance of an Administrative Claim;

(g)    To determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

(h)    To hear and determine objections to Claims, all Causes of Action, Avoidance Actions, and other suit and adversary proceedings to recover assets of the Debtor and property of the Estate, wherever located, and to adjudicate any other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced

or maintained pursuant to the Chapter 11 Case or the Plan, proceedings to adjudicate the allowance of Disputed Claims, proceedings to subordinate Claims, and all controversies and issues arising from or relating to any of the foregoing;

(i)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(j)    To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, modify and consummate the Plan, including any release, exculpation or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(k)    To hear any other matter not inconsistent with the Bankruptcy Code;

(l)    To enter the Final Decree closing the Chapter 11 Case;

(m)    To enforce all orders previously entered by the Bankruptcy Court;

(n)    to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated; and

(o)    to issue orders in aid of execution, implementation or consummation of the Plan.

## 8.3    Effective Date

If the Effective Date has not occurred by June 30, 2025, then upon motion by any party in interest and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before any Order granting such relief becomes a Final Order.  If the Confirmation Order is vacated pursuant to this Section, this Plan shall be deemed null and void in all respects and nothing contained herein shall constitute a waiver or release of any Claims by or against the Debtor.

## 8.4    Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the State of New York.

### 8.5    Effectuating Documents, Further Transactions

The Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 8.6    Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.


November 27, 2024.                              Respectfully submitted,


  /s/  Laurel D. Roglen
Matthew G. Summers*
Laurel D. Roglen
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Tel: (302) 252-4428
Email: summersm@ballardspahr.com
      roglenl@ballardspahr.com
(*Admitted pro hac vice)

*Attorneys for Wells Fargo Bank, National Association, as Trustee for the benefit of the registered holders of Benchmark 2020-B17 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B17*