UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re                                                                                    Chapter 11

25 JAY STREET, LLC                                                        Case No: 23-44083

                        Debtor
------------------------------------------------------------X

## DEBTOR'S OBJECTION TO CONFIRMATION OF THE LENDER'S CHAPTER 11 PLAN OF LIQUIDATION

25 Jay Street, LLC, the debtor and debtor-in-possession ("Debtor") by and through its attorneys BFSNG Law Group, LLP as and for its objection to the lender Wells Fargo Bank, National Association, as Trustee for the benefit of the registered holders of Benchmark 2020-B17 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B17 (together with its successors and assigns, the "Lender"), proposed chapter 11 plan of liquidation (the Lenders' Plan), respectfully represents as follows:

## BACKGROUND

1. Debtor filed a voluntary petition for relief from creditors under chapter 11 of the Bankruptcy Code on November 7, 2023. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor has continued in the management and operation of its business.

2. No trustee or examiner has been appointed on this case.

3. The Debtor's sole business is the ownership and operation of a five story mixed use building located in Brooklyn, New York, which consists of twenty five residential units and five retail units.

4. On November 27, 2024 the Lender filed a proposed disclosure statement and the Lender's Plan.

1

5. On September 8, 2025 the Court entered an order approving the amended disclosure statement and setting a hearing for October 9, 2025 to consider confirmation of the Lender's Plan.

6. The Debtor objects to confirmation of the Lender's Plan because it does not satisfy all of the requirements of Section 1129 of the Bankruptcy Code. The Lender's Plan should not be confirmed because the Lender has been, from the outset not proceeding in good faither and has not proposed its plan in good faith, the plan impermissibly classifies similar secured claims in different classes in order to gerrymander an impaired class to approve the plan.

## BAD FAITH CONDUCT OF THE LENDER

7. The Lender has not acted in good faith including, but not limited to the following, because:

a) It declared a default for a non-monetary default technicality during the Covid pandemic.

b) It refused to accept monthly mortgage payments.

c) It demanded a yield spread premium of $4,470,556.87 (essentially a pre-payment penalty) after wrongfully accelerating the loan

d) It began to purchase forced place insurance for the property at an exorbitant cost – notwithstanding the Debtor had in place throughout the entire time period all of the required insurance.

e) It wrongfully refused to stop purchasing the forced place insurance – even through today - notwithstanding the Debtor provided proof of continuous in place insurance.

f) The lender as added over one million dollars to the reinstatement amount for the wrongfully purchased insurance.

g) It is wrongfully refusing to remove the improper premiums including the interest on the advances.

h) Because of the wrongful acceleration the Lender has added hundreds of thousands of dollars of default fees.

8. The Lender's Plan seeks to sell the real property that is the sole asset of the Debtor for the less that the outstanding mortgage balance at a low point of the market cycle without the Debtor having the benefit of time for the market to recover and avoid a deficiency.

9. This Debtor is not a typical debtor that filed to cure a mortgage payment default.

10. This Debtor was compelled to file because of the Lender's actions which violated the implied covenant of fair dealing and good faith – a fundamental component of every contract. In 2020 during the Covid-19 shut down of New York City and indeed most of the country, the Debtor tried to have the loan reinstated, but the bank – which in bad faith – accelerated the loan and then added a "pre-payment penalty" of four million of dollars to its reinstate demand. This clearly indicated the entire acceleration scenario was just a garden variety "money grab".

11. The initial event which caused the Lender to accelerate the loan was not a payment default. A commercial tenant "Brooklyn Roasting Company" filed a petition for relief from creditors and ultimately ceased operations. While the Debtor lost substantial rent revenue from the tenant, it continued to pay its full monthly mortgage payment to Wells Fargo.

12. In December 2021 Wells Fargo declared a default because the Debtors cash flow ratio dropped below the minimum required under the loan documents due to the loss of the tenant and the Debtor has missed regular monthly payment. The Debtor believes the only reason it fell behind on its payments is because the Lender refused to accept them after the technical default.

Even though the Debtor was current on its payments in excess of $62,000.00 per month – the lender accelerated the loan and refused to accept the monthly mortgage payments.

13. Since the filing of the petition, the Debtor has been making monthly payments of adequate protection of $61,000.00 for each and every month the case has been pending. Additionally, the Debtor has paid over one million for real estate taxes. This is not a Debtor who is parked in Chapter 11 to avoid meeting monthly obligations.

14. In furtherance of the Lender's bad faith they have been paying for unnecessary forced place insurance premiums since 2022 totaling in excess of one million dollars. The Debtor has been simultaneously paying for its insurance which has never been cancelled or lapsed for non-payment.

15. The Debtor has provided evidence of the continuing insurance. The Debtor has provided actual copies of the policies. The Debtor has provided a letter from the broker stating the insurance has been continually in force without any lapse and yet incredibly the Lender refuses to discontinue the forced place insurance and in excess of over one million dollars in unnecessary premiums plus additional interest at the rate of 24% per annum on the insurance advance.

16. During the entire proceeding, Wells Fargo has not acted in good faith. It says it wants to reinstate the loan, takes weeks, if not longer to provide a reinstatement amount.

## LEGAL ARGUMENT

17. Section 1129(a)(3) requires the plan to be "proposed in good faith and not by any means forbidden by law." 11 U.S.C § 1129(a)(3). This means that plans must have been "proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988). Courts have held that a plan is considered proposed in good faith "if there is a likelihood that the plan will achieve a

result consistent with the standards prescribed under the [Bankruptcy] Code." *In re The Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Texaco Inc.*, 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988)). "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan." *Leslie Fay*, 207 B.R. at 781 (citations omitted); *Greer v. Gaston & Snow (In re Gaston & Snow)*, 1996 U.S. Dist. LEXIS 17774, 1996 WL 694421, at *9 (S.D.N.Y. Dec. 4, 1996) ("failure to propose a plan in good faith occurs when the Plan is not proposed with honesty, good intentions, and to effectuate the reorganization of the enterprise, but rather for some other motive") (*citing Kane*, 843 F.2d at 649). The requirements of section 1129(a)(3) "speaks more to the process of plan development" than just the content of the plan, and courts consider the totality of the circumstances surrounding the establishment of the proposed plan. *In re Quigley Co., Inc.*, 437 B.R. 102, 125 (Bankr. S.D.N.Y. 2010) (denying confirmation of plan that court determined was not proposed in good faith).

18. "The court may consider prepetition conduct of the [lender]" *Matter of Smith*, 848 F.2d 813, 821 (7th Cir. 1988); *In re Elsinore Shore Assocs.*, 91 Bankr. 238, 260 (Bankr. D. N.J. 1988) (prepetition conduct relevant) (emphasis added) (*quoting In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) (citing *In re Madison Hotel Associates*, 29 B.R. 1003, 1009 (D.C.W.D.Wis. 1983) (the court may consider a [lenders] pre-filing conduct) (emphasis added). Where, as here, the Lender's prepetition actions were marked by opportunism and inequitable treatment, including acceleration based on technical defaults, refusal to accept tendered payments, and imposition of unlawful charges. The Court is entitled to weigh such conduct in determining whether the Lender's Plan was proposed with honesty and good intentions as required by §1129(a)(3).

19. The Lender's Plan lacked good faith in structuring and proposing the Plan because, *inter-alia*:

   a. The Lender accelerated the loan during the COVID-19 pandemic not for any legitimate financial protection, but as a pretext to extract an unlawful "yield spread premium" exceeding $4.4 million—an amount tantamount to an impermissible prepayment penalty. Such conduct is inequitable and inconsistent with the implied covenant of good faith and fair dealing.

   b. The Lender declared a technical covenant default based on a temporary cash flow ratio decline, despite the Debtor remaining current on monthly mortgage obligations exceeding $62,000. These evidences opportunistic rather than protective conduct.

   c. The Lender purchased unnecessary forced-place insurance despite the Debtor maintaining continuous and valid coverage, inflating the secured debt by more than $1 million plus default interest at 24% per annum.

20. Instead of proposing a plan designed to maximize the value of the estate or facilitate reorganization, the Lender's Plan is a vehicle for liquidating the Debtor's sole asset at a distressed point in the market cycle, ensuring its own recovery while eliminating any prospect of rehabilitation or fair distribution. This is not the type of honest and rehabilitative intent required under § 1129(a)(3).

Dated: Syosset, New York
       October 3, 2025

                                          BFSNG LAW GROUP, LLP

                                          _____
                                          Gary C. Fischoff, Esq.
                                          6851 Jericho Turnpike, Suite 250
                                          Syosset, New York 11781